## STEIN *vs.* THE MAYOR, &c. OF MOBILE.

1. The power of taxation is essential to the existence of all governments, however limited their powers, and its surrender is never to be presumed, unless the intention to do so clearly appears.
2. The value of property is to be estimated with reference to the advantages or profits that can or may be derived from it. An intangible right or privilege attached to tangible property must therefore be considered, in estimating the value of that with which it is connected.

Error to the Circuit Court of Mobile. Tried before the Hon. John Bragg.

THE facts of this case may be thus stated: The Mayor, Aldermen and Common Council of Mobile, being entitled to certain water privileges under and by virtue of an act of the Legislature, on the 20th day of December 1840 granted to the plaintiff in error the sole right to supply the city of Mobile with water, at certain prescribed rates of compensation, from the Three Mile Creek, for twenty years, and covenanted to him the quiet enjoyment of the water-works that he should erect, during their erection and after their completion, for said term, "without let, molestation or hindrance" from them, and that they would at the expiration of said term, upon his delivering up said water-works and appurtenances in good order and condition, pay him their

actual value, to be ascertained by arbitrators, &c. In consideration of this grant, the plaintiff engaged to erect said waterworks on a lot to be procured at his own expense in the city of Mobile, and to introduce water into the city from said creek in sufficient quantity to supply said city and its citizens; to suffer and permit the said Mayor, Aldermen and Common Council at all times to use two fire plugs for washing the gutters of the streets, and in case of fire, as much water as might be necessary from all parts of the works; to place and so arrange the fire plugs that there should be four to each square, where the pipes are laid, and to permit the water to be used free of charge for the City Hospital and Guard House; and at the end of the term to surrender said works and appurtenances to the said Mayor, Aldermen and Common Council, they paying the actual value thereof, &c. In accordance with this contract, water-works were erected by the plaintiff. In 1848, the Mayor, Aldermen and Common Council, having the right to do so by the charter, imposed an ad valorem tax of 4-10ths of one per cent. on all real and personal property within the corporate limits of the city. The value of the lot and improvements alone was only $8,000, but with the water privileges, they were worth $75,000, and upon this latter valuation the assessment was made. Two questions were submitted to the court below—1st. Whether the property was liable to taxation at all; and 2d. If so, whether the assessment should be on the value of the lots and improvements alone, or upon them and the water privileges added. The court decided both questions against the plaintiff in error, and this decision is now assigned as error.

HAMILTON, RAPIER & HOPKINS, for the plaintiff in error:

1. The power claiming in this case the right to tax is not a sovereign power; it is a municipal corporation, having a right to tax its inhabitants in certain cases, but still not in any way partaking of the sovereign power. It is the mere creature of the sovereign power,—consequently its rights are to be looked for in its charter. No presumption is to be indulged in favor of its right to tax, as would be the case were it a sovereignty. In the case of such, the right of taxation inherently belongs to the idea of sovereignty, and unless distinctly waived, its right would be upheld. But the powers of corporations must be looked for in

their charters, and they are not entitled to the presumption of the existence of a right they derive. Such right must positively be shown to exist.—See 5 Port..Rep. 309-10. By their charters, the Mayor, &c. of Mobile are authorised to tax real and personal property, and to collect certain license taxes. Their remedy is in the nature of a writ of *fi. fa.*—See city charters, Acts 1843-4, p. 182, § 19; ib. 191, § 48; ib. 1842-3, 114. · They have no right then to tax anything save what would fall under these descriptions of taxable property.

2. Mr. Stein's property is found to consist of real estate and personal property to the value of $8,000, and the privilege he has acquired under his contract with the city and the acts of the Legislature, which by the case is valued at $67,000. The latter portion of the assessment is a *franchise*, held under grant from the State of Alabama. Can that be taxed by the city? If so, the grant by the sovereignty of the State to an individual within the city of Mobile is to the extent of the tax held at the will of the municipal authority; the sovereignty of the State to that extent is impaired by the action of one of its creatures!— Suppose the State authorise a bank in Mobile, a rail-way, or any other corporation—these are franchises. Can the city authorities forbid the exercise of those powers, or limit it? Can it say, you must pay me an annual contribution for using your privileges within the limits of my jurisdiction? The Bank of Mobile pays an annual bonus to the State of $5,000 for its privileges. Can the city corporation claim a bonus to be paid to itself? Yet this is the very thing the city is seeking to claim of Mr. Stein,— it is seeking to tax his franchise. Whether the State claims anything has nothing to do with the argument. If he pay nothing to the State, still the corporation, it is submitted, cannot add to the conditions under which he holds his franchise. This view seems to lie at the foundation of the decisions of the Supreme Court of the United States, denying to the States the right to tax the U. S. Bank, or other instruments of government resorted to by the Federal Government.—McCullough v. Maryland, 4 Wheat.; Weston and City of Charleston. The remedy given for the recovery of taxes is by levy and sale of the property on which they are assessed, which is the operation of *fi. fa.* The inference is, that the intention of the law was to permit taxation only on the visible property of the citizen. A franchise such

as this could not be sold.—The State v. Rives, 5 Ired. 297; 17 Mass. Rep. 243, bottom of page; 9 Johns. Rep. 99-100, bot. of page; 13 Serg. & R. 210. The court knew from the charter the city boundaries. Mr. Stein takes the water from Three Mile Creek (vide contract) beyond city limits; without this, his works in the city would be worthless. How can the city claim to tax privileges and property thus beyond its limits?

3. If the agreement between the city and Mr. Stein be examined, and bearing in mind that no such presumption of a right to tax should be made, as in the case of a sovereign power, it is submitted, it will appear no right to tax should be claimed.— The city convey all their rights to the subject of supplying the city with water, derived from acts of the Legislature, and all benefits to be derived from ordinances theretofore passed by the city authorities, to Mr. Stein, as fully as the city itself possessed them. This was the very object of the contract, and appears on its face, and this contract was in all things confirmed by the Legislature. So long as the city possessed the right and privileges, surely, no taxes could be collected; the city could not tax itself. The grantee should hold it on the same terms. Again, the corporation has expressly covenanted that the grantee, Stein, shall have *quiet possession of the same, without let, molestation or hindrance* by the grantors, their successors, or persons claiming under them. This covenant is to be taken most strongly against the covenantor, and being silent as to any reservation of powers over the matter, ought to be regarded as conclusive of the question. Insisting upon an annual contribution from Stein for the enjoyment of his privileges—threatening in case of non-compliance to seize and sell his property—is certainly anything but allowing a *quiet enjoyment, without let, molestation or hindrance.* To the extent of the tax, it is a molestation, a let and a hindrance. So that, it is submitted, by its covenant, the city is estopped from setting up any claim to tax. Again, the agreement shows a full consideration given by Stein, and the city at that time conceived it was securing a very desirable arrangement.— He buys of the city its materials on hand; he completes the works under a heavy penalty; he is allowed the sole privilege of bringing water into the town at certain rates for twenty years; he covenants to surrender the works to the city after that time at their actual value. During the time he is in possession of the

works, he allows the city the use of two plugs, (for cleansing the streets,) all the water needed at the Hospital and the Guard House, and in case of fire, any and all the water necessary to extinguish it from all parts of the works. Under these circumstances, it is submitted, that the agreement itself was intended to contain all the burthens that were to be imposed on the privilege; that Stein has a right to stand on the very terms of his contract; that the contract being reduced to writing of itself shows and was intended to show all that was to be required of Stein ; and that it is beyond the power of the city to insist on its right to impose a burthen not contained in the agreement, on the faith of which Stein expended his time, money and labor on a work at once adding to the comfort and security of the city and its property. The city could contract only as any other individual, and nothing outside the contract can or ought to be claimed as the right of either party.

CAMPBELL, for the defendants:

The 19th section of the act to incorporate the city of Mobile (Acts of 1844, page 182,) contains the grant of power to tax, which the General Assembly confers upon the corporate authorities : " That the said Mayor, Aldermen and Common Council shall have power to lay taxes on both the real and personal estate within said city, as well as a poll-tax upon all the inhabitants ; provided, that the said tax upon the personal and real estate be laid in pursuance of an assessment and valuation of said personal and real estate," &c. The question arises, is the property comprised in the assessment of which the plaintiff complains real or personal estate? The property belongs to the class denominated "incorporeal hereditaments."—Tippetts v. Walker, 4 Mass. 595.

2. There is no exemption from taxation in the acts which confer the franchise upon the plaintiff, nor the agreement of the corporation with him. The plaintiff receives compensation for all the benefits he confers. An exemption from taxation would be an additional benefit not stipulated by contract. The plaintiff claims a benefit which he does not pay for. He asks that his property may not pay taxes, as the property of all other men does.—Battle v. Corporation of Mobile, 9 Ala. 234. The principle contained in The Providence Bank v. Billings, 4 Peters,

determines this: "The relinquishment of the power of taxation is never assumed." The deliberate purpose of the community to abandon it must appear before such abandonment can be maintained. Neither in the contracts with Stein nor in the grants of the Legislature is there any such exemption. The power to tax is conferred without restriction in regard to the subjects of taxation. The property of the plaintiff is within the scope of the grant, and the assessments are all regular.—Louisville & Portland Co. v. Com., 7 B. Mon. 161; Brewster v. Hough, 10 N. Hamp. 138. The privilege attached to a public grant is matter of property; it is subject, like any other property, to the exercise of the supreme powers (i. e. eminent domain) of the State. The franchise can be condemned to the public use, like other property.—6 Howard's S. C. Rep. 507. The authorities before cited show that this eminent domain of the State is manifested in the exercise of the powers of taxation.—3 How. S. C. Rep. 133.

DARGAN, C. J.—It is contended by the plaintiff in error, that by the contract between him and the corporate authorities of the city of Mobile, the water-works are exempt from the payment of city taxes. If this be so, the contract must show that it was the intention of the defendants in error to abandon and give up the right to tax this property, for the right of taxation is essential to the existence of all governments, as well that of a city with limited powers as any other, and it is never to be presumed that this right is abandoned or surrendered unless it clearly appears that such was the intention. This is the rule declared by the Supreme Court of the United States in the case of the Providence Bank v. Billings et al., 4 Peters, 514, and also in the cases of Louisville & Portland Canal Co. v. The Commonwealth, 7 B. Monr. 160, and Brewster and Hough, 10 N. Hamp. 138. We must therefore look to the agreement itself, and find upon its face a surrender or a relinquishment of this right, or the exemption cannot be successfully claimed by the plaintiff. The contract grants to Stein the sole privilege of supplying the city of Mobile with water from Three Mile Creek for the term of twenty years, with all the rights and advantages that the city possessed by or under an act passed the 20th December 1820, entitled "An act to incorporate an aqueduct com-

pany in the city of Mobile, and also all the rights and advantages derived from any other act relating thereto or amendatory thereof; and at the expiration of said term, the right is reserved to the city to take the water-works upon paying to Stein the value thereof, to be ascertained in the mode prescribed by the agreement. The inducement to Stein to enter into this agreement was the right to charge all who might use the water at certain prescribed rates, except so far as he was bound to furnish the city with water free of charge, for the purposes specified in the agreement. But no term of this agreement exempts the property employed or used in the erection of the works from taxation, nor is such an exemption a necessary inference from any thing granted, nor can it arise from any restriction imposed on the city. The right therefore to tax the property is not restricted nor impaired by the contract, and may lawfully be exercised.

2. It is again contended, that if the water-works can be taxed, that the property used in their construction, together with the lot of land on which the reservoir is situated, alone should be valued, and the tax should be assessed on that value, irrespective of the value arising from the right or privilege to charge for the use of the water. To this argument we cannot assent. The value of property must be estimated by the advantages or profits that are or may be derived from it; and if one own tangible property, with which is connected an intangible right or privilege, in forming a just estimate of the value we must consider the tangible property in connection with the intangible right or privilege. By any other rule than this, we would often estimate property of great value as worth but very little. For instance, if a charter is granted to erect a rail-road, and the company go on to complete the work, and it yields large profits, in forming an idea of value, if we separate all the component parts of value and estimate each separately, we should fall far short of the intrinsic worth. The right to charge toll, disconnected from the road, would be worth nothing; and the land over which the road may run and the materials employed in its construction are of but little value when disconnected from each other. But when we consider all the component parts of value in connection with each other, and thus connected yielding profits, we then can fix a just estimate of value. In the case before us, if we were to estimate the lot of land and iron pipes alone, the record shows

us that their value is only $8,000, but the land and pipes and the privilege of charging all who may use the water, valued in connection with each other, are worth $75,000. If we therefore should estimate the property as worth only $8,000, we should fall far short of its intrinsic worth. Nor can we perceive any reasonable objection to this mode of estimating the value. It is true that the right to supply the city with water, disconnected from those works necessary to render it profitable, would be a barren right, and probably of no value; for instance, had the works never been completed, the mere privilege of supplying the city with water could have yielded nothing. But still it would have been a right, and when that right is connected with corporeal objects of property and becomes valuable, the whole should be estimated in the connection in which they stand in order to arrive at a proper estimate of their value. The case of The State v. Reeves, 5 Ired. 297, we think entirely unlike the case before us. In that case a charter had been granted to a rail-road company and the road had been completed; a judgment was recovered against the company, and the road was sold under execution, and the question was what passed by the sheriff's sale. The court held that the purchaser acquired the land over which the road passed and the materials with which the road was constructed, but no part of the privilege confered by the charter on the company. . If we admit that this decision is entirely correct, it cannot aid the plaintiff in error. The question in that case was what passed by the sale; the question in the case before us is what is the value of the property. A privilege or franchise may not be liable to seizure and sale, but we cannot think it will be denied that it is property. But it is contended that the charter only authorises the corporate authorities to tax *real and personal property*, and that this privilege is neither. In answer to this, we will only say that it cannot be considered as a right of action merely, but it is property in possession, and being property, it must be embraced within the one or the other of those terms, for we know of no species of property that cannot be said to be either real or personal, whether it be corporeal or incorporeal. We come therefore to the conclusion, that in estimating the value of the property the city assessors correctly considered the land on which is situated the reservoir, the pipes through which the water is conducted into

the city, and the privilege of charging all who might use it, in connection with each other, and the value of the whole thus estimated is liable to taxation.

Let the judgment be affirmed.