JAMES J. SAYERS' APPEAL FROM COUNTY COMMIS-
SIONERS.

Third Judicial District, Bridgeport, April Term, 1915.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

Under our statutes (General Statutes, §§ 2671, 2734, chapter 106 of
the Public Acts of 1905 and chapters 62 and 98 of the Public Acts
of 1913) the purchaser of a liquor license at an execution sale takes
it subject to the burden of satisfying the county commissioners
that he is a suitable person and that the place continues to be a
suitable one for the sale of liquors; but in other respects he acquires
all the rights of the licensee in the unexpired term and may there-
fore appeal from the refusal of the county commissioners to con-
sent to a transfer of the license, based upon their view of the un-
suitability of the place.
There is no conclusive presumption that a place once found to be suit-
able for the sale of intoxicating liquors continues so for the entire
term of the license.
Where the place has become unsuitable since the license was granted,
that fact is a sufficient reason for refusing to assent to a transfer
of the license: for it would be an idle ceremony to allow the transfer
in one proceeding and then revoke the license in another.
The suitability of the place is ordinarily to be determined by the county
commissioners as an inference or conclusion of fact.

Argued April 13th—decided June 10th, 1915.

APPEAL from a decision of the county commis-
sioners of New Haven County refusing to transfer a
liquor license to the appellant, a purchaser at an exe-
cution sale of the original license, taken to and tried
by the Superior Court in New Haven County, *Case, J.;*
facts found and judgment rendered confirming the
action of the county commissioners, and appeal by
the appellant. *No error.*

*William E. Thoms,* with whom was *Edward B. Reiley,*
for the appellant (applicant for transfer).

*Dennis W. Coleman* and *Finton J. Phelan,* for the appellees (remonstrating taxpayers).

WHEELER, J. One Coogan had a license to sell liquors at 34 Washington Street, Waterbury, from November 1st, 1913, to November 1st, 1914, which license was duly sold, under execution, to Sayers on June 25th, 1914. Sayers made application to the county commissioners of New Haven county for a transfer of this license to himself; certain taxpayers remonstrated, and, after hearing had, the application was denied on the ground that the place was unsuitable. Sayers appealed to the Superior Court, which rendered judgment dismissing the appeal and confirming the decision of the commissioners, and from this judgment Sayers appealed to this court.

The first question arises on the motion to correct the finding. This motion, if granted, concededly would not disturb the judgment of the county commissioners as to the unsuitability of the premises in question for the sale of liquors under a retail license. We pass upon this motion, not because it is essential to the disposition of the case, but in order to relieve the applicant of the probable effect of certain of these findings for which we find no justification in the oral stipulation of the parties, which contained all the facts before the court. Counsel for the appellees assumed to state the facts agreed upon, in their brief submitted to the trial court; presumably, through failure of the appellant to controvert this part of the brief, and because the suitability of the applicant was not in reality in issue, the trial court, through inadvertence, accepted all of the facts of the brief as accurate. In fact they varied from the oral stipulation in several important particulars, viz.: in the statement that the premises were inadequately policed; that the

saloon was conducted by Coogan in a disorderly manner; that Sayers in fact knew of the door connecting the saloon with the dwelling, and that he caused the connection to be sealed with intent to deceive the county commissioners in respect to the suitability of the place for a license. The motion to correct is granted in these particulars.

The appellees contest the right of appeal in this proceeding. On review of our statutes in force prior to 1907, we held that they did not give a transferee of a liquor license a right of appeal from the decision of county commissioners. *D'Amato's Appeal,* 80 Conn. 357, 359, 68 Atl. 445; *Wakeman's Appeal,* 74 Conn. 313, 316, 50 Atl. 733. General Statutes, § 2671, provided that "any licensee, or in case of his death his executor or administrator, may, with the consent of the county commissioners, transfer his license to any other suitable person." Chapter 62 of the Public Acts of 1913, p. 1670, amended this section by adding: "The county commissioners shall not grant such a transfer of license, except upon due notice and hearing as now provided by law for original applications, and the law concerning appeals from county commissioners shall apply to such cases." One of the purposes of this amendment was to grant an appeal from the decision of the county commissioners in every case of transfer by a licensee. Chapter 98 of the Public Acts of 1913, p. 1692, in terms recognizes the existence of such a right of appeal. A license is property. It may be sold by the licensee, attached, replevied, or sold on execution. The purchaser on execution acquires all the rights of the licensee in the unexpired term; but before he can avail himself of its benefits he must comply with all the requirements of law relative to the procuring of an original license for the sale of liquors. In terms the statute does not grant an appeal. Public

Acts of 1907, p. 644, Chap. 83. But one of the rights of the original licensee is the right of appeal, and this, we think, passes to the purchaser on execution sale as a necessary incident of his ownership of the un-expired term. It is fairly to be inferred from the terms of General Statutes, § 2671, and chapter 83 of the Public Acts of 1907, that, operating together, they gave Sayers a right of appeal, and that such was the intention of the General Assembly. This accords with the practice in related cases of removal and re-newal. We discover no reason for providing an appeal for a voluntary transferee and denying it to a trans-feree by operation of law; and we cannot think the General Assembly intended any such distinction.

The sole question raised in the reasons of appeal is whether the trial court erred in confirming the deci-sion of the county commissioners refusing to consent to a transfer of the license to sell liquors from Coogan to Sayers because they found the place unsuitable. This is to be determined by ascertaining whether the commissioners have the right to refuse a transfer of a license to a purchaser of it on execution sale on the ground that the place is unsuitable. The original Act (Public Acts of 1882, Chap. 107, Part 4, p. 181, § 4) provided that any licensee might transfer his license to a suitable person with the consent of the county commissioners, but it required the transferee to "make a similar application, procure a like recommendation, and execute a bond of the same amount and character, as hereinbefore required of" the original licensee. General Statutes, § 2671, changed the phraseology somewhat by requiring the transferee to make "such an application, procure such a recommendation, and execute such a bond, as was required of the" original licensee. The amendments to this section (chapter 39 of the Public Acts of 1911, and chapters 62 and 98

of the Public Acts of 1913) do not change this part of the section. The clear intent of the statute of 1882, made doubly plain by the wording of the Revision, was to place the transferee in precisely the position of an original applicant. A prerequisite to the issuance of a license is the finding that the licensee is a suitable person, and his place of business a suitable place. We have already quoted chapter 62 of the Public Acts of 1913, amending General Statutes, § 2671. This statute expressly conforms the hearing on a voluntary transfer, and the appeal from the decision thereon, to those existent in the case of an original application.

Chapter 128 of the Public Acts of 1895, p. 509, was the earliest statute specifically making provision for the attachment and taking on execution of a license to sell liquors. With inconsequent changes it appears as General Statutes, § 2734, and the latter part of the section provides: "The purchaser of such license on execution shall, in order to use the same, comply with all the statutory requirements of a person to obtain a license for the sale of intoxicating liquors from county commissioners, and the license shall be equally valid in his hands as in the hands of the original licensee, for the unexpired term." Chapter 106 of the Public Acts of 1905, p. 320, changed the wording of this part of the section as follows: "provided, that before such purchaser may avail himself of the benefit of such license he shall comply with all the requirements of law relative to the procuring of an original license, for the sale of intoxicating liquors," etc. This made clearer what was clear before, that the purchaser on execution sale, before he can sell under his license, must comply with the requirements of law imposed upon the original licensee, viz.: establish the suitability of himself to sell, and of his place as one in which to sell, liquors. While the suitability of place is not

specifically referred to in the statute, one of the requirements of the law which the original licensee must observe is the proof of this fact, hence it is included in these requirements. Any other construction of this statute would place the voluntary transferee in worse position than the transferee by operation of law. The one must then establish the suitability of his place; the other need not. The same considerations of public policy affect the one as the other, and we are not to infer, except upon adequate ground, that the General Assembly intended to make so striking a difference under practically identical conditions.

We cannot assent to the suggestion that a place found suitable must be conclusively presumed to remain so for the term of the license. A change of conditions and surroundings may make what was a suitable place an unsuitable one. The law may not presume the continuance of a fact which time and circumstance have set aside.

Nor can we assent to the suggestion that revocation is the proper course if the place has become unsuitable. It would be an idle ceremony to compel a grant of transfer by one proceeding, and then to revoke the license by another. But pending revocation, by authority of law, liquor would be sold in an unsuitable place; and the General Assembly, we are convinced, never intended this. It must necessarily follow, as we have pointed out, that unless the application for a transfer is to be treated as an original application, Sayers was not entitled to appeal, since General Statutes, § 2734, does not expressly give it, and it must arise if at all as a privilege attaching to an original application for a license. We find in the removal statute a somewhat similar provision: "and the commissioners shall not permit such removal or transfer except upon due notice and hearing as now provided

by law for original applications." General Statutes, § 2669. Of this provision we said: "The application for a removal permit by a licensed person under § 2669 of the statutes is to be treated as an application for a new license at the place to which the business is to be removed." *Marenna's Appeal,* 87 Conn. 350, 351, 87 Atl. 745.

The question of the suitability of the place was upon the record an inference of fact for the commissioners and there is nothing to indicate that they acted illegally, or in abuse of their discretion, nor that the Superior Court erred in confirming the decision of the commissioners.

There is no error.

In this opinion the other judges concurred.