### In re FUETL.

(District Court, D. Connecticut. November 30, 1917.)

No. 4036.

1. ATTACHMENT ⬤⇒49—EFFECT OF AMENDMENT OF STATUTE—PENDING CAUSES.
   Gen. St. Conn. 1902, § 2734, providing that liquor licenses should be subject to attachment and execution, was amended by chapter 36, Pub. Acts 1915, so as to provide that such attached license "and all renewals thereof" should be held to respond to execution for the same period of time as in attachment of personal property; the words quoted being added by the amendment. *Held*, that the amendment applied only to attachments made after it went into effect, and that the lien of an attachment made prior to that date expired with the license attached.

2. STATUTES ⬤⇒270—AMENDMENT—SETTING FORTH PROVISION AS AMENDED.
   Where a statute is amended to "read as follows," the amended section being set out in full, the provisions of the original statute that are repeated are to be considered as having been the law from the time they were first enacted, and the new provisions from the time the amendment takes effect.

In Bankruptcy. In the matter of Rudolph Fuetl, bankrupt. On review of order of special master denying claim of Philip Weinemann to a lien. Order confirmed.

B. E. Spencer, of Middletown, Conn., for claimant.

Patrick T. O'Brien, of Meriden, Conn., for Connecticut Breweries Co.

THOMAS, District Judge. This matter is now before the court upon the petition of Philip Weinemann, a creditor, for a review of the special master's decision denying Weinemann's claim of a lien upon and first preference of payment out of the proceeds of the sale of a certain liquor license, which was issued to the bankrupt by the county commissioners for Middlesex county on November 1, 1915.

Under the statutes of Connecticut, the license issued was the renewal of a former license, and was sold by order of the referee in bankruptcy free from the petitioner's claimed attachment lien, as well as

the claimed attachment lien of the Connecticut Breweries Company, a Connecticut corporation located at Bridgeport, in Fairfield county.

The facts disclosed by the record and admitted by all parties show that in April, 1915, the bankrupt executed and delivered to Weinemann two promissory notes, one for $1,000, made payable on demand, and the other for $2,000, made payable on May 1, 1915; both bearing interest. No part of the principal and interest due on the first note was paid, and only $300 on the principal of the second note, leaving due to the claimant on the two notes the sum of $2,700, with interest.

In order to recover the balance due on said notes, the petitioner, by mesne process duly issued on the 27th of July, 1915, brought an action at law, returnable to the superior court for Middlesex county, on the first Tuesday of September, 1915; and on the 29th day of July, 1915, the officer serving the process duly made attachment of the original license under which the bankrupt was then conducting a saloon business. No judgment was ever obtained, and the case was pending at the time of bankruptcy on the docket of the superior court.

By process dated and issued September 25, 1915, the Connecticut Breweries Company brought an action at law against the bankrupt, returnable to the superior court for Fairfield county on the first Tuesday of November, 1915, to recover the balance due on a certain promissory note which he had executed in its favor under date of March 12, 1915, and on said September 25, 1915, caused an attachment of the original liquor license to be made to secure payment of any judgment which might be rendered in its favor in said action.

On June 9, 1916, the company obtained a judgment in said cause for $2,936.36 damages and $34.47 costs, and on June 12, 1916, execution thereon was duly issued and placed in the hands of an officer authorized to make service, who forthwith levied upon the stock and fixtures of the bankrupt's business, and retained control and possession thereof until directed by the referee in bankruptcy to surrender the same to the bankrupt's trustee. On July 7, 1916, Fuetl, on his own petition, was duly adjudicated a bankrupt in this court, and subsequent thereto one James J. Fitzpatrick was appointed trustee of his estate.

Upon the order of the referee in bankruptcy, the said license, together with the stock and fixtures of Fuetl's store, were sold by the trustee, free and clear of all liens or claims of lien of both the petitioner and of the said the Connecticut Breweries Company, at public auction for $3,900, which was more than sufficient to pay the judgment of the Connecticut Breweries Company, with interest.

After the sale of said license, stock, and fixtures, the company brought its petition to this court, wherein it prayed that the court order all parties having any interest in the matter to appear at some suitable time and place, then and there to show cause why an order should not be issued by this court directing the trustee to turn over to it, in satisfaction of its judgment, the amount of said judgment, with interest and the costs of execution, on the ground that its attachment lien on said license had existed for a longer period than four months prior to Fuetl's adjudication in bankruptcy, and because it was the first valid lien on said license.

The referee in bankruptcy for Middlesex county feeling himself disqualified in the premises, this court appointed Edward M. Yeomans, Esq., referee in bankruptcy for Hartford county, special master to hear and determine the questions presented by said petitioner, and, after due notice and hearing, the special master reported in favor of the allowance of the claim of the Connecticut Breweries Company and against the claimed right of lien of Weinemann.

[1] The controlling question here relates wholly to the purpose and effect of section 2734 of the General Statutes of Connecticut, as finally amended by chapter 36 of the Public Acts of 1915, which amendment took effect on August 1, 1915. The answer to this question will dispose of the incidental question as to whether Weinemann's attachment of the license carried with it a valid attachment of the renewal license.

As the law stood before this amendment, all attached liquor licenses were held to respond to execution for the same period of time as was provided in cases of attachment of personal property, and the attachment lien was continued after execution had issued, without the certificate of license being removed from the premises in which it was when attached, until the time the attached license was sold under the execution. All licenses thus sold were also equally valid in the hands of a purchaser at such a sale for the whole of the unexpired term for which the license was originally granted, in the same way as if in the hands of the original licensee, though before such a purchaser could avail himself of the benefit of such a license he must have first complied with all the requirements of law relative to the procuring of an original license from the county commissioners.

The amendment of 1915 is as follows:

"Section 2734 of the General Statutes as amended by chapter 106 of the Public Acts of 1905 and by chapter 83 of the Public Acts of 1907 is hereby amended to read as follows: The license, and all right and interest therein, of any person licensed by the county commissioners to sell intoxicating liquors may be attached and taken on execution. Such attachment shall be made by leaving a true and attested copy of the process and accompanying complaint with the proper indorsements thereon of the officer serving the same, as in other civil cases, with the defendant, or at his usual place of abode if within this state, and a like true and attested copy shall be left at or forwarded by registered mail to the office of the county commissioners who granted such license. Constables of the town in which the business under such license is conducted may, in the attachment of such license, commence service of process by leaving such copy at the office of the county commissioners. Such attached license, *and all renewals thereof*, shall be holden to respond to execution for the same period of time as in attachments of personal property, and the lien of such attachment shall continue after execution has issued without removal of such certificate of license from the premises in which the same is exhibited, until the time when such license is sold by virtue of such execution. Such license shall, for the unexpired term for which it was granted, be equally valid in the hands of the purchaser thereof as in the hands of the original licensee, provided before such purchaser may avail himself of the benefit of such license, he shall comply with all the requirements of law relative to the procuring of an original license, for the sale of intoxicating liquors, from county commissioners."

An examination of the amendment of 1915 shows that, in substance, the only amendment made by the act of 1915 was the insertion of the

underscored words "and all renewals thereof." It will be noticed that all renewals of such license were likewise made holden to respond to execution for the same period of time and in the same manner as theretofore had been provided in relation to original licenses.

Prior to 1895 a license issued to sell spirituous and intoxicating liquors was not property in any constitutional sense (La Croix v. County Commissioners, 49 Conn. 591), and it was not until chapter 128 of the Public Acts of 1895, which created the right to attach liquor licenses, became law, that the privilege granted by such a license certificate was made subject to attachment and permitted to be taken on execution in satisfaction of a judgment against the licensee. Since that time, however, such a license has been held to be property, which may be sold by the licensee, and also attached, replevied, or sold on execution, though the purchaser of such license must take it subject to the burden of satisfying the county commissioners as to his being a suitable person, and his place a suitable one for the sale of liquors. Where this burden is satisfactorily borne, the purchaser acquires all the rights of the licensee for the unexpired term of the license. Sayers Appeals, 89 Conn. 315, 94 Atl. 358.

In none of the previous legislative acts of Connecticut, relative to the making of attachments and taking on execution liquor licenses, is reference made to the attachment and execution · liens continuing against such a license for a longer period of time than the term covered by the attached license, though in the act of 1915 special reference is made to such liens holding to renewals of such a license. This fact alone would seem to indicate that the Legislature intended that only attachments made and executions issued after the act went into effect should be held to apply to renewals of such a license, for, had the Legislature wished the amendment to apply to cases brought before and pending at the time the act went into effect, it could very easily have so stated in the amendment. Such a provision would have removed any doubt as to its intention. Not having done this, I must hold that no such effect or application was intended.

[2] Were the court to construe the act in the spirit contended for by the petitioner, it would have the effect of negativing the words "and all renewals thereof," contained in the amendment, in so far as they might be held as applying to the original license attached by Weinemann, and this would seem to be against a proposition, universally understood, that where a statute or a portion thereof is amended, by declaring that "as amended it should read as follows," and then sets forth the amended section in full, the provisions of the original statute that are repeated are to be considered as having been the law from the time they were first enacted, and the new provisions are to be understood as enacted at the time the amendment takes effect. ·

In view of this, I feel satisfied that the special master committed no error in his finding and report, and the same is therefore accepted and confirmed. Ordered accordingly.