[L. A. No. 20171. In Bank. July 30, 1948.]

E. L. ROEHM, Appellant, v. COUNTY OF ORANGE et al., Respondents.

Head, Wellington & Jacobs, Arthur M. Bradley and Otto A. Jacobs for Appellant.

Fred N. Howser, Attorney General, J. Albert Hutchinson, Deputy Attorney General, Irwin M. Fulop, Landon Morris,

Albert E. Isenberg, Holbrook & Tarr and W. Sumner Holbrook, Jr., as Amici Curiae on behalf of Appellant.

Joe Ogle, County Counsel, George F. Holden, Royal E. Hubbard, Deputy County Counsel, and John K. Colwell, City Attorney (Santa Ana), for Respondents.

Harold W. Kennedy, County Counsel (Los Angeles), and Loton Wells, Deputy County Counsel, as Amici Curiae on behalf of Respondents.

TRAYNOR, J.—The County Assessor of Orange County in 1946 assessed as personal property plaintiff's on-sale general liquor license issued by the State Board of Equalization. Ad valorem county and city property taxes levied thereon in the sum of $432.62 were paid by plaintiff under protest, and he brought this action to recover them. He appeals from a judgment dismissing his action upon the sustaining of a general demurrer to his complaint.

Plaintiff contends that liquor licenses, like many other intangible assets, are not taxable. He asks that the court be mindful of the practice for almost a hundred years in this state not to levy property taxes on liquor licenses and other licenses or on many other intangible assets such as patents, copyrights, trademarks, judgments, causes of action, the goodwill of businesses, insurance policies, stock exchange seats, press association memberships, and memberships in social, professional, and fraternal clubs. He contends that this practice was based on the conviction of taxing authorities as well as taxpayers that such intangibles are not property within the meaning of the constitutional and statutory provisions imposing a uniform property tax on all nonexempt property in the state, and that this conviction was sustained by this court in holding that the right to a stock exchange seat is "too impalpable to go into any category of taxable property." (*San Francisco* v. *Anderson,* 103 Cal. 69, 70 [36 P. 1034, 42 Am.St.Rep. 98].) He also contends that section 1 of article XIII of the California Constitution and statutory provisions enacted pursuant thereto must be read, not alone, but in conjunction with the various amendments adopted to the property tax provisions of the Constitution; that these amendments made substantial changes with respect to personal property by establishing

the policy of eliminating altogether property taxation of all intangibles except solvent credits and substituting therefor taxation of the income derived from such intangibles; that in implementing this policy the Legislature enacted the Personal Income Tax Act [Stats. 1935, p. 1090 as amended; 3 Deering's Gen. Laws, Act 8494] and eliminated property taxation of intangibles except for a minimal tax on solvent credits; and that in any event counties and cities cannot impose property taxes on liquor licenses without encroaching upon the exclusive power of the State Board of Equalization under section 22 of article XX of the California Constitution to issue such licenses and to collect license fees and occupation taxes on the manufacture and sale of liquor.

Defendants contend on the other hand that a liquor license is property within the meaning of section 1 of article XIII of the California Constitution and sections 201 and 103 of the Revenue and Taxation Code*, under which all property in this state must be uniformly taxed unless it is exempt from taxation and that there is no exemption of liquor licenses; and that since the tax in question is a property tax and not an excise tax on an occupation, it does not encroach upon the exclusive power of the State Board of Equalization under section 22 of article XX to issue liquor licenses or collect license fees and occupation taxes on the manufacture and sale of liquor. Defendants' reasoning is as follows: The attributes of property in a liquor license are the exclusive right granted by the state to a small group of licensees in each county to enjoy the benefits of the business of engaging in the sale of distilled spirits and the transferability of the right by ordinary sale. Under section 38f of the act [Stats. 1945, ch. 1401; 2 Deering's Gen. Laws, Supp., Act 3796], licensees received valuable rights and privileges not available to others, since the number of general liquor licenses is limited in proportion to the population in each of the counties of the state. Others who wish to enter the business can do so only by acquiring the privilege from one who has been previously licensed. Consequently, the license itself has become as valuable as the stock in trade or the other tangible assets of a liquor establishment. Although a liquor license is merely a privilege so far as the

---

*"All property in this State not exempt under the laws of the United States or of this State, is subject to taxation under this code." (§ 201.)

" 'Property' includes all matters and things, real, personal, and mixed, capable of private ownership." (§ 103.)

relations between the licensee and the state are concerned, it is property in any relationship between the licensee and third persons, because the license has value and may be sold. (*Doggender* v. *Seattle Brewing and Malting Co.*, 41 Wash. 385 [83 P. 898, 4 L.R.A.N.S., 626, 628]; 148 A.L.R. 492; *Jaffe* v. *Pacific Brewing and Malting Co.*, 69 Wash. 308 [124 P. 1122].) A liquor license that is transferable has been held to be property subject to execution and attachment if local law provides a statutory procedure therefor (*Rowe* v. *Colpoys,* App. D.C., 137 F.2d 249, 148 A.L.R. 488, 492; *In re Fuetl,* 247 F. 829, 40 Am.Bank.Rep. 570; *Sayers' Appeal,* 89 Conn. 315 [94 A. 358]), and under the Bankruptcy Act [30 Stats. 544, 11 U.S.C.A. § 1 et seq.] such a license is usually regarded as property that passes to the trustee in bankruptcy. (*Fisher* v. *Cushman,* 103 F. 860 [43 C.C.A. 381, 51 L.R.A. 292].) These decisions recognize the principle that since such a license has a transferable value to the debtor it is property that in fairness ought to be within the reach of his creditors. Since by statute a liquor license in this state has in effect been given a transferable value, it has assumed the characteristics of property. If a system of ad valorem taxation is to reach all property in the community, tenuous distinctions should not be indulged in to exclude a liquor license from taxation. Virtually the same reasoning could be advanced for the taxation of other forms of governmental permits, stock exchange seats, press association memberships, memberships in social, professional, and fraternal clubs, patents, copyrights, goodwill, judgments, causes of action, and insurance policies, which have never been taxed as property in this state during its entire existence. These contentions therefore raise questions of public importance that involve numerous rights and privileges other than liquor licenses, for the characteristics that it is claimed make liquor licenses taxable as property would likewise make numerous other rights and privileges taxable as property.

Article XIII of the California Constitution as first adopted provided for a uniform property tax upon real and personal property alike. This requirement of uniform taxation of real and personal property, however, has been abandoned by subsequent amendments. Under these amendments the Legislature may classify personal property for purposes of taxation or exempt all personal property or

any form, type, or class thereof. In the light of these amendments and the legislation pursuant thereto, it is unnecessary to determine whether liquor licenses and other intangible rights and privileges, which under settled practice were not taxed as property when the Constitution made uniform taxation of all property in the state mandatory, should have been taxed. The controlling question is whether under present constitutional and statutory provisions such licenses can now be regarded as personal property for the purposes of taxation.

The constitutional amendments relating to the taxation of personal property, particularly intangibles, as adopted in 1933 as part of section 14 of article XIII, read in part as follows: ''The Legislature shall have the power to provide for the assessment, levy and collection of taxes upon all forms of tangible personal property, all notes, debentures, shares of capital stock, bonds, solvent credits, deeds of trust, mortgages, and any legal or equitable interest therein, not exempt from taxation under the provisions of this Constitution, in such manner, and at such rates, as may be provided by law, and in pursuance of the exercise of such power the Legislature, two-thirds of all of the members elected to each of the two houses voting in favor thereof, may classify any and all kinds of personal property for the purposes of assessment and taxation in a manner and at a rate or rates in proportion to value different from any other property in this State subject to taxation and may exempt entirely from taxation any or all forms, types or classes of personal property.

''The total tax imposed on notes, debentures, shares of capital stock, bonds, solvent credits, deeds of trust, mortgages, and any legal or equitable interest therein in pursuance of the provisions of this section shall not be at a rate in excess of four-tenths of one per cent of the actual value of such property and no tax burden shall be imposed upon any personal property either tangible or intangible which shall exceed the tax burden on real property in the same taxing jurisdiction in proportion to the actual value of such property.''

The distinction in the first clause of this amendment between ''all forms of tangible personal property'' and ''all notes, debentures, shares of capital stock, bonds, solvent credits, deeds of trust, mortgages, and any legal or equitable

interest therein'' and the reference in the second clause to ''any and all kinds of personal property'' and to ''any and all forms, types, or classes of personal property'' indicate that the framers of the amendment, following the practice established for generations and sustained by this court in *San Francisco* v. *Anderson,* 103 Cal. 69, 70 [36 P. 1034, 42 Am.St.Rep. 98], were of the view that the intangibles listed covered all the forms of taxable intangible property, just as the phrase ''all forms of tangible personal property'' covered all forms of such property. The first clause is a grant of power to the Legislature to provide for the assessment, levy, and collection of taxes, but it does not grant power to provide for the taxation of intangible assets other than those listed. Moreover, it cannot reasonably be assumed that the provision authorizing classifications and exemptions, which is all inclusive, was intended to be broader in scope than the provision granting power to provide for assessment, levy, and collection, for it is in ''pursuance of the exercise of such power'' that the classifications and exemptions may be made.

What appears from the constitutional provisions by clear implication is expressly stated in section 111 of the Revenue and Taxation Code, which defines intangibles and intangible personal property for purposes of taxation: '' 'Intangibles' means intangible personal property of a type not exempt from taxation and any interest therein. 'Intangible personal property' means *only* notes, debentures, shares of capital stock, bonds, solvent credits, deeds of trust, and mortgages.'' (Italics added.) It is clear that it is the purpose of section 111 to confine the meaning of intangible personal property to the intangibles listed, not to establish the fiction that intangible assets other than those therein specified are tangible personal property. Emanating from a Legislature vested with the power to exempt from taxation all kinds of personal property, it makes immune from taxation all intangibles not included in the statutory definition. Intangible values, however, that cannot be separately taxed as property may be reflected in the valuation of taxable property. Thus, in determining the value of property, assessing authorities may take into consideration earnings derived therefrom, which may depend upon the possession of intangible rights and privileges that are not themselves regarded as a separate class of taxable property. (*Los Ange-*

*les etc. Co.* v. *Los Angeles County,* 162 Cal. 164 [121 P. 384];
*Eastern-Columbia, Inc.* v. *County of Los Angeles,* 61 Cal.
App.2d 734, 745 [143 P.2d 992]; *Birch* v. *County of Orange,*
59 Cal.App. 133, 136, 138 [210 P. 57]; *Ewert* v. *Taylor,* 38
S. D. 124 [160 N.W. 797]; *South Utah Mines & Smelters* v.
*Beaver County,* 262 U. S. 325, 330 [43 S.Ct. 577, 67 L.Ed.
1004]; *Stein* v. *Mobile,* 17 Ala. 234; see 3 Cooley, Taxation
(4th ed.), § 1145; 51 Am.Jur. 649.)

It should be noted that franchises are not governed by
the foregoing provisions of section 14 of article XIII of the
California Constitution or of section 111 of the Revenue and
Taxation Code. They are made a separate subject of tax-
ation by section 16 of article XIII: "The Legislature may
provide by law for the taxation of corporations, their fran-
chises, or any other franchises, by any method not prohibited
by this Constitution or the Constitution or laws of the United
States." Franchises have long been regarded in this state
as a class of property separate from all other classes of prop-
erty. (*San Jose Gas Co.* v. *January,* 57 Cal. 614; *Spring
Valley Water Works* v. *Schottler,* 62 Cal. 69; *Stockton
Gas & Electric Co.* v. *San Joaquin County,* 148 Cal. 313
[83 P. 54, 7 Ann.Cas. 511, 5 L.R.A.N.S. 174]; *Kern River
Co.* v. *Los Angeles County,* 164 Cal. 751 [130 P. 714];
*Western Union Telegraph Co.* v. *Hopkins,* 160 Cal. 106 [116
P. 557]; *Postal-Telegraph Cable Co.* v. *City of Los Angeles,*
164 Cal. 156 [128 P. 19].) The tax imposed by the Bank
and Corporation Franchise Tax Act (Stats. 1929, p. 19, as
amended; 3 Deering's Gen. Laws, Act 8488) on corporations
for the privilege of exercising their corporate franchises in
this state according to or measured by their net income is
"in lieu of all ad valorem taxes and assessments of every
kind and nature upon the general corporate franchises of
the corporations taxable hereunder but shall not be in lieu
of any taxes or assessments upon the special franchises
owned, held or used by said corporations. All such special
franchises shall be assessed annually by the State Board of
Equalization (at their actual value) in the same manner as
is provided for the assessment of other property to be as-
sessed by said board under Section 14 of Article XIII of
the Constitution of this State, and shall be subject to tax-
ation to the same extent and in the same manner as other
property so assessed by said board." (§ 4 (7).)

The constitutional and statutory provisions relat-
ing to the taxation of franchises are not applicable, how-

ever, to liquor licenses and have never been applied to such licenses, for under the decision of this court in *Spring Valley Water Works* v. *Schottler*, 62 Cal. 69, 107, licenses to engage in business activities are not franchises for purposes of taxation.

The construction of section 14 of article XIII of the California Constitution and section 111 of the Revenue and Taxation Code as specifying the intangible assets (except franchises, for which specific provision is made elsewhere) that are subject to property taxation is clearly supported by the considerations of policy underlying the amendments to the Constitution and the legislation pursuant thereto. It has long been recognized that concealment of intangible assets inescapably follows from the imposition of high property taxes thereon, and that the question of releasing intangibles from property taxation or reducing tax rates involves a consideration of all intangibles. (Seligman, Essays in Taxation (10th ed.), pp. 17-32, 61-62; *ibid.* 641-659 [Reprint of Presidential Address at the Ninth Ann. Conf. of the Nat. Tax. Assn. San Francisco, Aug. 11, 1915]; Leland, The Classified Property Tax in the United States, 27-30, 117-130; 178-221; 401-419; Jensen, Property Taxation in the United States, 54-56, 172-203; James, Taxation of Intangibles, 58 Annals of the Amer. Acad. for Pol. and Soc. Science, 95-104.) In determining the validity of a statute concerning taxation of intangibles enacted under the 1924 amendments to section 12½ of article XIII of the California Constitution, this court declared in *Arnold* v. *Hopkins*, 203 Cal. 553, 559 [265 P. 223]: ". . . [E]xperience had shown that whatever the difficulties, obstacles and inequalities encountered by tax officials in the assessment, levy, and collection of taxes upon property in proportion to its value, these were accentuated in the endeavor of these officials to discover and adequately subject to taxation certain kinds of personal property which, from its nature, was susceptible of being sequestered and concealed by the owners thereof with a view to escaping taxation, or which the assessable value, also from the nature thereof, was difficult of ascertainment. These forms of elusive property were, generally speaking, notes, solvent credits, bonds, debentures, shares of stock and like properties sometimes characterized as 'intangibles.' Of recent years the amount and variety of forms of these so-called intangible properties has vastly increased

with the result that the extent to which properties of the foregoing classes were either evading taxation or, when found, were being subjected to inordinate and unjust burdens had grown to be a real evil in the structure and operation of our state laws affecting and providing for local taxation. It was precisely this evil which required remedial legislation, but it was an evil which legislation could not fully reach and remedy without a change in the state constitution, and in those provisions thereof . . . which provided for the uniform taxation of all property in proportion to its value.''

Similarly, the California Tax Commission, under a mandate from the Legislature to investigate and report on matters of revenue and taxation (Stats. 1927, ch. 455), was guided in its proposal concerning taxation of intangibles by the experience demonstrating that intangible personal property should be taxed differently from all other kinds of property as a whole. In its report to the governor on August 10, 1928, the commission proposed that the intangibles that were subsequently specified in section 14 of article XIII of the Constitution should be subject to no higher tax rates than four-tenths of one per cent on their actual values. This proposal was adopted in the 1933 amendments to section 14 of article XIII. The report (p. 50) designated the proposal of the commission as a ''Proposed Plan For The Taxation of Intangibles.'' The necessity for a constitutional provision with respect to the taxation of intangibles is explained in detail. ''The Commission is convinced that the taxation of such property at full valuation and at the full rate is an administrative impossibility and an ethical monstrosity. To extend special treatment to such property is, in its opinion, a practical necessity.'' The fact that the proposal of the commission, incorporated into the Constitution in 1933, was concerned with all intangible personal property appears not only from the heading of the proposal in the report and the considerations set forth therein, but with particular clarity from table XIII in the report, which showed the methods of ''Taxation of Intangibles in Certain States.'' The information included in this table is given under such column headings as ''Intangibles subject to special rate,'' ''Intangibles Exempt from Ad Valorem Tax,'' ''Substitute for Ad Valorem Tax on Intangibles.'' By comparing its proposed maximum rate with the taxation of all kinds of intangibles, the commission made

it clear beyond possibility of doubt that its proposal was directed at all intangibles subject to property taxation.

██ The only intangibles (except franchises, which are in a class by themselves) subject to taxation under the present system of property taxation in this state are solvent credits, which are taxed at the minimal rate of one per mill on their actual value. (Rev. & Tax. Code, §§ 1059, 2153.) All other types of intangible assets specified in section 14 of article XIII of the Constitution, as amended, and section 111 of the Revenue and Taxation Code are exempted from taxation by section 212 of that code and are therefore not part of the taxable personal property in this state. This system of taxation is supplemented, however, by taxes imposed upon or measured by net income including income derived from all kinds of intangible rights and privileges. Such taxes were regarded by the Legislature and the framers of the constitutional amendments to article XIII of the California Constitution as a sufficient burden on the benefits derived from the ownership of such rights and privileges.

Acting under the authority of section 14 of article XIII of the Constitution, as amended, the Legislature provided that the intangibles specified in section 14, except solvent credits, were no longer taxable ''if and when a net income tax shall be passed or adopted in this State.'' Section 3627a of the Political Code, as amended, also provided: ''Upon the passage or adoption of such tax and from the time such income tax becomes effective such net income tax shall be in lieu of the tax herein provided for upon notes, debentures, shares of capital stock, bonds, deeds of trust, mortgages and any legal or equitable interest therein. Provided, however, that any and all taxes imposed herein on such property prior to the passage or adoption of such net income tax and the effective date thereof shall remain fully collectible and distributable hereunder.'' (See *Pacific Co.* v. *Board of Supervisors,* 8 Cal.2d 611 [67 P.2d 335] ; *Weber* v. *County of Santa Barbara,* 15 Cal.2d 82, 85 [98 P.2d 492].) The same amendment to section 3627a of the Political Code reduced the rate on solvent credits to one-tenth of 1 per cent. It cannot reasonably be assumed that the Legislature intended to replace by income taxation all property taxes on intangible assets theretofore taxed, but to impose on taxpayers whose intangible rights and privileges were theretofore not considered taxable property, not only the new income tax burden but also prop-

erty taxes at ordinary rates. Among the absurdities that would ensue from such property taxation would be the taxation of life insurance policies at rates exceeding in some instances 4 or 5 per cent of the value of such policies. Intangible assets are often interchangeable so that exemption of some and taxation of others at high rates would induce taxpayers to convert highly taxable intangibles into tax-free intangibles or to conceal them. Thus, subjection of patents or copyrights to such taxes would lead to the transfer of such rights to foreign corporations in exchange for corporate stock specifically exempted from property taxation by section 212 of the Revenue and Taxation Code.

It follows from the foregoing construction of the 1933 amendments to the Constitution and section 111 of the Revenue and Taxation Code that only the intangibles therein specified are to be regarded as personal property for purposes of taxation. ■ Liquor licenses as well as other intangible values not included in the list of intangibles specified in that constitutional provision and in section 111 are therefore not subject to ad valorem taxation as personal property.

Although liquor licenses are not taxable as property and the licensees are not subject to local license or occupation taxes for the selling of intoxicating liquor (Cal. Const., art. XX, § 22; *Los Angeles Brewing Co.* v. *Los Angeles,* 8 Cal. App.2d 391 [48 P.2d 71]), cities, counties, and cities and counties receive substantial revenue from the fees imposed for such licenses. Section 22 of article XX of the California Constitution, in recognition of the fact that the centralization in the state government of liquor control and the collection of license fees and occupation taxes from liquor licensees would deprive local subdivisions of the state of a potential source of revenue, provides: ''The Legislature shall provide for apportioning the amounts collected for license fees or occupation taxes under the provisions hereof between the State and the cities, counties and cities and counties of the State in such manner as the Legislature may deem proper.'' Pursuant to this provision section 37 of the Alcoholic Beverage Control Act as enacted in 1935 gave cities, counties, and cities and counties 50 per cent of the license fees collected. (Stats. 1935, p. 1123, 1142; 2 Deering's Gen. Laws, Act 3796.) Under the 1947 amendment to this section all the revenue from such fees is distributed to the cities, counties, and cities and counties of the state. (Stats. 1947, p. 1766.) If this revenue is not ade-

quate or commensurate with the value of the licenses, the remedy lies in the augmentation thereof by the Legislature pursuant to the power vested in it, not in the imposition by the local subdivisions of the state of an additional tax on the privileges for which the license fees are paid.

The judgment is reversed.

Gibson, C. J., Schauer, J., and Spence, J., concurred.

Edmonds, J., concurred in the judgment.

SHENK, J., Dissenting.—The conclusion in this case is neither required nor justified by the law of this state. It is contrary to the constitutional mandate that all property be taxed except such as is specifically exempt from taxation. Here there is no exemption of this and like property rights, enormous in value in the aggregate, except the exemption by judicial fiat.

It is the fact of which there is no denial that a liquor license issued pursuant to the Alcoholic Beverage Control Act is a valuable property right, owned privately as property is owned although subject to appropriate regulatory provisions in the exercise of the police power, is transferable for a cash consideration and therefore has an ascertainable valuation, is subject to levy of execution for the benefit of creditors, and may become an item of property in the estate of a deceased holder. The majority nevertheless conclude that this valuable property right is not within the category of ad valorem taxation, because, so it is stated, only the intangibles specified in section 111 of the Revenue and Taxation Code are to be regarded as personal property for purposes of taxation. The conclusion is conceived by implication from a statutory definition in turn based on a conceded implication from constitutional provisions, and the breath of life attempted to be given the exemption by the statement of a policy of expediency or practicality which cannot be invoked to enlarge statutory provisions for exemption.

The majority opinion alludes only in passing to section 1, article XIII, of the state Constitution which provides: "All property in the State except as otherwise in this Constitution provided, not exempt under the laws of the United States, shall be taxed in proportion to its value, to be ascertained as provided by law, or as hereinafter provided. The word

'property,' as used in this article and section, is hereby declared to include moneys, credits, bonds, stocks, dues, franchises, and all other matters and things, real, personal, and mixed, capable of private ownership . . .''

The subsequent provision in section 14 of article XIII quoted in the opinion, as granting power to provide for the assessment, levy and collection of taxes upon all forms of tangible personal property, all notes, debentures, shares of capital stock, bonds, solvent credits, deeds of trust, mortgages not exempt from taxation, in the absence of express limitation should not be read to exclude the existing constitutional power to tax items not listed, inasmuch as the obvious purpose of so enumerating the specific items was to place thereon the limitation as to the amount of tax appearing in the paragraph following. That this is so also appears from the language in the latter paragraph following the specified limitation reading ''and no tax burden shall be imposed upon any personal property either tangible or intangible which shall exceed the tax burden on real property in the same taxing jurisdiction in proportion to the actual value of such property.'' Far from being the clear implication stated by the majority, there is here no implication at all that the taxing power on intangibles was limited to the specified items. The limitation in respect to those items was only as to the amount of the tax. The inclusion of items for the purpose of that limitation furnishes no reason for implying the exclusion of unspecified intangible property from the taxing power. There is therefore no limitation of the taxing power to the specified items by implication or otherwise. The statement that there is no grant of power to provide for taxation of intangible items other than those listed is beside the point and an erroneous basis for the conclusion, since the Constitution is deemed not to be a grant of power but a restriction upon the powers of the Legislature (*People* v. *Coleman*, 4 Cal. 46, 49-50 [60 Am.Dec. 581]). As noted the fundamental law demands the exercise of the power to tax all property tangible or intangible capable of private ownership, not exempt under the laws of the United States, and the express limitation of the amount of the tax on specified items is not a contradiction thereof.

The Legislature has the power to provide for exemptions, but such exemptions must be express. They will not be inferred or implied. The majority read definitions of ''Intangibles'' and ''Intangible Personal Property'' contained in section

111 as an intention to include as exempt under section 212 an item of property not mentioned therein. Section 111 is contained in a chapter (§§ 101-128) entitled "Construction." Section 101 provides: "Unless the context otherwise requires, the general provisions hereinafter set forth govern the construction of this division." (Div. 1, Property Taxation, §§ 101-5143.) Section 103 reads: " 'Property' includes all matters and things, real, personal, and mixed, capable of private ownership." This is the all-inclusive definition of the Constitution. Section 106 provides: " 'Personal property' includes all property except real estate." Section 111: " 'Intangibles' means intangible personal property of a type not exempt from taxation and any interest therein. 'Intangible personal property' means only notes, debentures, shares of capital stock, bonds, solvent credits, deeds of trust, and mortgages." The purpose of statutory definitions is to indicate the meaning to be ascribed to certain words when used in the statute. The definition was desirable in order to follow the constitutional mandate regarding the limitation on the taxing power of specified intangible items. Therefore the word "intangibles" as so defined means only the specified items when that word is used in the code. Section 201 which begins article 1 (Ch.1, pt. 2, §§ 201-213), entitled, "Taxable and Exempt Property," provides that all property in the state, not exempt under the laws of the United States or of this state, is subject to taxation under this code. This is a restatement of the constitutional provision in section 1, article XIII. Section 212 reads: "Notes, debentures, shares of capital stock, bonds, deeds of trust, mortgages, and any interest in such property are exempt from taxation."

The lack of relationship between section 111 defining "Intangibles" and section 212 enumerating exempt items must be obvious. But the majority purport to vitalize the unrelated conclusion by seeking support in considerations of policy which may underlie distinctions in personal property taxation due to a tendency to conceal intangible assets or minimize the value thereof for the purpose of avoiding high taxes. Such distinctions, if any are to be made, are of legislative cognizance. In the absence of legislative direction, the problem becomes one primarily for the local assessment authorities in determining whether a specified class of intangible property not exempt has a sufficient ascertainable valuation to be included in the assessment rolls. In this connection the ma-

jority appears to be of the opinion that there is an evil which requires a remedy. If that be so, then it is also a matter of legislative rather than judicial responsibility. But the factual situation indicates that the Legislature is not greatly concerned in granting such an exemption. After the trial court entered judgment in this case (Jan. 3, 1947) upholding the tax, and during the 1947 session of the Legislature, the interests favoring exemption from ad valorem taxation of liquor licenses sought an amendment of the Revenue and Taxation Code to that effect (Assembly Bill No. 1839). The bill failed of passage, and the proper assumption is that the Legislature was satisfied that the exercise of authority by the local taxing officials in the present case was in accord with the Constitution and the statute and that an exemption was undesirable.

It also follows from the foregoing that the ''in lieu'' (income) tax discussed by the majority applies only to the items specified in section 3627a, Political Code, as amended, namely, notes, debentures, shares of capital stock, bonds, deeds of trust, mortgages and any legal or equitable interest therein. These are the same items exempted by section 212 of the Revenue and Taxation Code. To say that it is absurd to include in ad valorem taxation valuable intangible assets not specifically exempt, and particularly the valuable asset here sought to be taxed, will come as a comforting surprise to those abundantly able to bear their just share of the burden of taxation.

The majority opinion implicitly concedes that the tax involved, since it has strictly a revenue raising purpose as distinct from one that is regulatory or restrictive, is not an occupational tax or license fee the imposition and collection of which is reposed exclusively in the State Board of Equalization (Const., art. XX, § 22) with provision for apportionment thereof among local governmental bodies. (See *Los Angeles* v. *Los Angeles etc. Co.*, 152 Cal. 765 [93 P. 1006] ; *Ingels* v. *Riley*, 5 Cal.2d 154 [53 P.2d 939, 103 A.L.R. 1] ; *Flynn* v. *San Francisco*, 18 Cal.2d 210, 215 [115 P.2d 3], citing *Dawson* v. *Kentucky Distilleries & Warehouse Co.*, 255 U.S. 288, 292 [41 S.Ct. 272, 65 L.Ed. 638].) Occupational taxes and license fees, therefore, are not involved in the problem, nor are they affected by a decision in this case.

Certainly the Anderson case (*San Francisco* v. *Anderson*, 103 Cal. 69 [36 P. 1034, 42 Am.St.Rep. 98]) decided in 1894,

holding that the ownership of a seat on the stock exchange was a personal privilege and the value thereof too uncertain to be included in any category of taxable property, should not here be accorded any controlling effect. The force of the decision in that case has vanished in view of the great weight of authority to the contrary since that time. Such privileges, inasmuch as they have large ascertainable market values, are now held to be property subject to ad valorem taxation unless expressly specified to be exempt. (See *Citizens National Bank* v. *Durr*, 257 U. S. 99, 108 [42 S.Ct. 15, 66 L.Ed. 149]; *In the Matter of Hellman*, 174 N.Y. 254 [66 N.E. 809, 95 Am.St.Rep. 582]; *State* v. *McPhail*, 124 Minn. 398 [145 N.W. 108, Ann.Cas. 1915C 538, 50 L.R.A.N.S. 255], referring to the "personal privilege" basis of California and Pennsylvania cases as unsound; 61 C.J. § 179, p. 203; 51 Am.Jur. § 421, p. 442 and additional cases cited note 11.)

In my opinion our constitutional and statutory provisions require a conclusion that the ad valorem tax on the property here involved should be upheld, and that the judgment of the trial court should be affirmed.

Carter, J., concurred.

Respondents' petition for a rehearing was denied August 26, 1948. Carter, J., and Shenk, J., voted for a rehearing.