[S. F. No. 12764. In Bank.—March 8, 1928.]

DOROTHY M. ARNOLD, Petitioner, v. ED. W. HOPKINS, as Assessor, etc., et al. Respondents; CITY OF PASADENA (a Municipal Corporation), Intervener.

W. S. Burnett, U. S. Webb, Attorney-General, and Frank L. Guerena, Deputy Attorney-General, for Petitioner.

Everett W. Mattoon, County Counsel, J. H. O'Connor, Assistant County Counsel, and W. Sumner Holbrook, Jr., Deputy County Counsel, for Respondents.

R. C. McAllaster, City Attorney of Pasadena, for Intervener.

Overton, Lyman and Plumb for California State Association of Finance Companies, and O'Melveny, Tuller & Myers for Investment Bankers Association of America, *Amici Curiae*.

John J. O'Toole, City Attorney of San Francisco, Walter A. Dold, Chief Deputy Attorney of San Francisco, Jess E. Stephens, City Attorney of Los Angeles, Lucius P. Green, Assistant City Attorney of Los Angeles, W. Turney Fox, City Attorney of Glendale, Rowland M. Reid, City Attorney of Long Beach, and R. C. Waltz, City Attorney of Beverly Hills, *Amici Curiae* in Support of Respondents.

RICHARDS, J.—The questions involved in this proceeding are presented upon the application of the petitioner herein for the issuance of a writ of mandate directing the respondents herein to desist from doing a certain series of official acts looking to the preparation, printing, and procuring of certain statements and other printed forms and blanks which are to issue preparatory to the assessment and collection of taxes for the current year upon certain kinds of taxable property to be hereinafter described, and which acts it is alleged the respondents are preparing and threatening to do in conformity with the terms of a certain statute which the petitioner avers to be unconstitutional and void; and that by said writ this court shall further command the respondents in their several official capacities to do and perform said official acts in conformity with another statute which the petition avers to be in full force and effect. The respondents rest their opposition to the issuance of said writ upon their return, which only puts in question the sufficiency of the applicant's petition. An intervention has been presented herein on behalf of the City of Pasadena, which sets forth no new or issuable facts, but supports the position of the applicant herein. Certain *amici curiae* have also filed briefs in support of the position taken by the respondents herein, as to which of said statutory enactments is in operation; while, on the other hand, the attorney-general of the state of California has appeared herein to present views

both orally and by briefs hereinafter to be commented upon. The constitutional amendment thus referred to is the amendment to section 12½ of article XIII of the state constitution, which was adopted by the people at the general election in 1924, and which reads as follows:

"The legislature, subject to section one of article four, shall have power to provide for the assessment, levy and collection of taxes upon all notes, debentures, shares of capital stock, bonds, solvent credits or mortgages, not exempt from taxation under the provisions of this Constitution, in a manner, at a rate or rates or in proportion to value different from any other property in this state subject to taxation; taxes imposed by any act of the legislature adopted pursuant to the powers hereby conferred shall be in lieu of all other property taxes, state, county, municipal or district, upon such property. The legislature shall provide for an equitable distribution of such taxes to the county, municipality or district in which such property is taxed; provided, that the rate or rates of taxation of such securities, and penalties, shall not exceed those assessed or imposed upon other property in this state not exempt from taxation, and that when the same shall have been fixed by the legislature, they shall not be altered except by vote of two-thirds of all the members elected to each of the two houses voting in favor thereof."

The legislature of 1925, purporting to act in compliance with the mandate of the foregoing amendment to the constitution, added to the Political Code, section 3627a thereof, which reads as follows:

"The assessor of each county, city and county, city district, or other political subdivision, shall assess notes, debentures, shares of capital stock, bonds, solvent credits, and mortgages or deeds of trust, which are taxable to the owner thereof under provisions of the laws of this state other than this section and section three thousand six hundred and twenty-seven of this code, at seven per cent of the full cash value thereof; provided, that the taxpayer shall have included such property in the annual statement, under oath, made and delivered to the assessor as required by law; provided, however, that as to such property so included in such annual statement that may be made as of the first Monday

of March, 1926, if any such property so disclosed shall have escaped assessment for the last preceding year and shall have been then in the ownership or under the control of the same person so including such property in such annual statement, the provisions of section three thousand six hundred forty-nine of the Political Code shall not apply; and provided, further, that in the event of failure or refusal to file such annual statement such property shall be assessed at its full cash value, except as provided in section three thousand six hundred twenty-seven of this code. In determining the full cash value of the properties hereinbefore enumerated in this section, the assessor shall not take into account the existence of any custom or common method, if any, of assessing any other class or classes of property at less than the full cash value thereof.'' (Stats. 1925, p. 13, sec. 3.)

In the year 1927 the legislature undertook to amend the foregoing section of the Political Code by an enactment (Stats. 1927, p. 399, sec. 2), which reads as follows:

''Each county, or city and county, shall tax notes, debentures, shares of capital stock, bonds, solvent credits and mortgages or deeds of trust, which are taxable to the owner thereof under the provisions of the laws of the state, at a rate of one and forty-five hundredths per centum of the full cash value thereof; provided, that the taxpayer shall have included such property in the annual statement under oath made and delivered to the assessor as required by law; provided, that in the event of failure or refusal to file such annual statement such property shall be assessed at double its full cash value. The taxes so collected shall be deposited in the general fund of the county or city and county in which such property is taxed.''

It is the contention of the petitioner herein that the foregoing amendment to section 3627a of the Political Code is a valid enactment, but that the respondents herein are proceeding to ignore the same and to do or threaten to do the official acts above referred to in conformity with the terms of the original section enacted in 1925, and which the applicant alleges has been superseded by the amendment of 1927. The respondents, the interveners, and their supporting

*amici curiae* insist that the enactment of 1925 is valid and its attempted amendment in 1927 void.

This would seem to be a case calling in a peculiar sense for the application of that cardinal canon of interpretation which requires courts in the course of construing laws to consider (1) the former law; (2) the evil to be remedied, and (3) the proposed remedy. We shall accordingly first consider the state of the former law governing the assessment and collection of taxes upon these forms of personal property, which are referred to both in the constitutional amendment above quoted and in each of the statutory enactments which have been passed since its adoption.

The constitution of 1879, in section 1, article XIII thereof, provided that "all property in the state not exempt under the laws of the United States shall be taxed in proportion to its value to be ascertained as provided by law. The word 'property' as used in this article and section is hereby declared to include moneys, credits, bonds, stocks, dues, franchises, and all other matters and things, real, personal and mixed, capable of private ownership." This section of the constitution was amended from time to time, either internally or by the incorporation of subsections into the article itself, the purpose of such amendments being chiefly to create certain exemptions from the general terms of the section up to the year 1910, during which period all property subject to taxation was assessed, and the local, as well as state taxes, collected thereon in the several counties, cities and counties, municipalities and districts wherein such property was situated. The state board of equalization and the boards of supervisors of the several counties of the state, in the capacity of county boards of equalization provided for in section 9 of article XIII of the constitution, equalized the valuation of taxable property, the former for state and the latter for local taxation. The state legislature during the same period, in various enactments not necessary here to be enumerated, provided for the details of the plan of assessment and taxation thus in vogue during that time. The constitution also contained the provisions (Const., sec. 11, art. I) that "all laws of a general nature shall have uniform operation." In the year 1910, however, a radical change of policy was adopted by the people and engrafted on the

constitution, by the terms of which embodied in section 14 of article XIII thereof certain enumerated properties such as railroads, street railways, express companies, gas and electric companies, insurance companies, telegraph and telephone companies, banks and numerous other forms of property not practically subjectable to local evaluation were to be assessed and the taxes collected thereon by the state directly and at rates or bases of taxation different from that provided for in *ad valorem* taxation; and the taxes derived therefrom paid into the state treasury and applied to the expenses incident to the operation and activities of the state government. All other property, excepting what had thus been taken out of the sphere of local taxation, continued to be assessed and taxed as before this change became effective, and the moneys derived from such local taxation were distributed to the local and subordinate subdivisions of the state permitted to assess, levy, and collect such taxes under the statutes which remained in force. In the meantime experience had shown that whatever the difficulties, obstacles and inequalities encountered by tax officials in the assessment, levy, and collection of taxes upon property in proportion to its value, these were accentuated in the endeavor of these officials to discover and adequately subject to taxation certain kinds of personal property which, from its nature, was susceptible of being sequestered and concealed by the owners thereof with a view to escaping taxation, or of which the assessable value, also from the nature thereof, was difficult of ascertainment. These forms of elusive property were, generally speaking, notes, solvent credits, bonds, debentures, shares of stock and like properties sometimes characterized as "intangibles." Of recent years the amount and variety of forms of these so-called intangible properties have vastly increased, with the result that the extent to which properties of the foregoing classes were either evading taxation or, when found, were being subjected to inordinate and unjust burdens had grown to be a real evil in the structure and operation of our state laws affecting and providing for local taxation. It was precisely this evil which required remedial legislation, but it was an evil which legislation could not fully reach and remedy without a change in the state constitution, and in those provisions thereof

above referred to which provided for the uniform taxation of all property in proportion to its value. It was in order to invest the state legislature with powers elastic enough to reach and remedy both phases of this growing inequality in the taxation of these so-called intangibles that the amendment embodied in section 12½ of article XIII of the constitution was finally adopted by the people in 1924, and in which it was undertaken to enumerate the classes of such properties over which the legislature was to exercise the elastic control with which by said constitutional amendment it was sought to be invested. When we therefore read this amendment to the constitution in the light of the history of state and local taxation which preceded it, its objects and its limitations appear plain. In the matter of the method to be by it selected for the assessment, levy, and collection of taxes upon the kinds of property enumerated in said amendment the legislature was to be given a free hand. It could provide for the assessment, levy and collection of such taxes by the state or by any subordinate branch or agency thereof it might see fit to select. It might invest the same state officials and agencies with the power and the machinery for the assessment, levy and collection of the taxes upon these particular properties which had already been entrusted with the collection of taxes from properties directly and solely subjected to state taxation under the provisions of section 14 of article XIII of the constitution already in full operation and effect. It might commit the assessment, levy, and collection of these taxes to counties and cities and counties. It might even call into being a special form of commission or agency for the assessment, levy, and collection of these taxes if the legislature in its wisdom saw fit so to do. There were, however, certain important limitations imposed upon the legislature in its exercise of the foregoing power.

These limitations may be clarified by reading together the following clauses of said amendment, which are apparently interrelated: First, ''The legislature . . . shall have the power to provide for the assessment, levy and collection of taxes upon all notes,'' etc.; second, ''Taxes imposed by any act of the legislature adopted pursuant to the powers hereby conferred shall be in lieu of all other property taxes, state, county, municipal or district, upon such

property''; third, ''The legislature shall provide for an equitable distribution of such taxes to the county, municipality or district in which such property is taxed''; fourth, ''The rate or rates of taxation of such securities and penalties shall not exceed those assessed or imposed upon other property in the state not exempt from taxation''; fifth, ''When the same shall have been fixed by the legislature they shall not be altered except by vote of two-thirds of all the members elected to each of the two houses voting in favor thereof.'' When these provisions of this amendment are thus read together they would seem to compel the conclusion that the duty imposed upon the legislature thereby was that of providing a law covering the entire field of taxation of the forms of property designated therein, and embracing in its express provisions the valuation, the rate or rates of taxation and the equitable distribution of the taxes to be derived from the burden thus to be laid upon such properties. For the legislature in attempted compliance with the foregoing provisions of said amendment to merely fix a basis of assessment for such properties, but to go no further, would not suffice to meet the requirement that the taxes imposed at such valuation should be in lieu of all other property taxes, state, county, municipal, or district upon such property, for the reason that to merely fix a basis of assessment is not to impose taxes; while to leave the imposition of the rate or rates of taxation inferentially to the counties, municipalities or districts theretofore imposing such taxes at rates fixed by each of these can by no process of reasoning amount to the imposition of taxes by ''an act of the legislature pursuant to the powers hereby conferred'' which shall be ''in lieu of all such former and local taxation.'' Nor would the mere fixation of a basis of assessment suffice to comply with the requirement that ''The legislature shall provide for an equitable distribution of such taxes''; nor would it suffice to furnish the guarantee contained in the proviso that ''the rate or rates of taxation of such securities and penalties shall not exceed those imposed upon other property in this state not exempt from taxation''; nor would it furnish to succeeding legislatures a ''rate or rates'' of taxation of such securities which such succeeding legislatures could not alter except by a two-thirds vote of

562

the members thereof. ▮ It would seem, therefore, to follow that the act of the legislature of 1925, by its mere fixing of a basis of assessment of the properties enumerated therein, fails to meet the other foregoing requirements of this amendment to the constitution, and must therefore and for the reasons above set forth be held to be invalid.

▮ The legislature of 1927 undertook to replace the act of 1925 with another and radically different scheme of taxation, and in so doing in some part undertook to provide by legislative action both for a basis of taxation of the classes of property designated in the foregoing amendment to the constitution and for a rate of taxation. As to the former the basis of assessment of such properties was to be "the full cash value thereof." As to the latter the rate fixed by the legislature was to· be "one and forty-five hundredths per centum" of such cash value. Thus far the legislature correctly interpreted its powers and duties in so far as the fixation of a basis of assessment and also of a rate of taxation upon such properties are concerned; and in so doing also complied with the terms of said amendment requiring that the taxes thus assessed and at the rate thus imposed should be "in lieu of all other property taxes, state, county, municipal or district, upon such property." But in thus complying with the act in the foregoing respects the legislature of 1927 apparently overlooked or misconceived one of the most vital requirements of the aforesaid amendment to the constitution, viz., that requiring that "The legislature shall provide for an equitable distribution of such taxes to the county, municipality or district in which such property is taxed."

▮ In considering the reasons which impel us to this conclusion we are met at the outset with the obstacle arising out of the use by the framers of the foregoing constitutional amendment of the word "or" in the above-quoted clause thereof, and which, if strictly construed to mean "or" instead of "and," would seem to give to the legislature power to repose the funds derived from the taxation of these so-called intangibles in any one of the local entities named in the constitution, and that such disposition of these funds would constitute "an equitable distribution" thereof.

We are unable, however, to so interpret the intent of the framers of the constitutional amendment, for the following reasons, which seem to our minds to be controlling. In the first place, the use or misuse of the words "or" and "and" interchangeably in legislation has been the subject of frequent animadversion on the part of courts; so much so, in fact, that the solution of the question as to whether the framers of a law intended, whichever of these words was used, to mean "or" or "and" has come to depend almost wholly upon the context in which one or the other of these words appears and the reasons underlying the legislation and which would be conserved by the use of disjunctive or conjunctive forms of speech regardless of the particular word employed. This was made plain by this court in the case of *Washburn* v. *Lyons*, 97 Cal. 314 [32 Pac. 310], wherein the word "and" in a statute was construed to mean "or"; and was quite clearly stated and argued with much citation of authority in the case of *Abbey* v. *Board of Directors, etc.*, 58 Cal. App. 757 [209 Pac. 709], wherein the word "or" was construed to mean "and" in order to carry out the legislative intent. Applying the foregoing rule of interpretation to the clause in question, and viewing it by its context in the constitutional amendment and also by the aid of those other principles of interpretation which should be our guide in ascertaining the meaning of laws, we are satisfied that the word "or" must be given the meaning of "and" in the clause in said amendment immediately under inspection. Viewed first from its context it is difficult to perceive how the phrase "equitable distribution" of taxes imposed upon property located within counties, municipalities, and districts, all of which have heretofore been tax-imposing and tax-distributing entities, could be accomplished by the giving of this entire tax, when collected, to one of these entities without some provision for the direct sharing of these particular taxes with each of the other of such entities. It is argued with some degree of plausibility that since the several counties of the state embrace all its territory and hence include within their boundaries all municipalities and all districts, the act of 1927 in providing for the assessment and levy of the taxes to be derived from these particular forms of property by the

counties, and in providing that such taxes when collected should go into the general funds of each county, to be thence disbursed for those general county purposes for which moneys placed in such general funds are available, the provisions of the act of 1927, which place all of such taxes in the county treasury satisfies the constitutional requirements as to the equitable distribution thereof. It is true that by such distribution every part of the county affected thereby receives some benefit, but this benefit is of necessity an indirect one in so far as these particular funds are concerned. To say, for example, to the City of Pasadena, which is an intervener herein, that the sum of $53,661.62 which was received by that municipality during its last fiscal year from its taxation of these intangibles located within its boundaries, and which it had applied to purely local purposes, shall be levied and collected by the county and shall go into the general fund of the county, and that the only benefit which the municipality will derive from this particular tax upon its local properties is to be in the form to which the general funds of the county of which it is a part are to be devoted, is to do nothing more nor less than when it asks for bread to give it a stone; since it is obvious that Pasadena and all the other municipalities of all the other counties of California, when deprived of the moneys which the local taxation of these forms of local property have heretofore supplied and which taxes they have heretofore been able to apply to local improvements and benefits, must be put to the alternative of either foregoing such benefits or of laying heavier burdens in the way of taxation upon other local taxable property in order to continue to afford them.

When, however, we look beyond the context of this clause in the constitutional amendment to determine whether the word ''or'' in the clause under inspection means ''and,'' and whether, if it does so, the requirement as to equitable distribution contained therein means the direct distribution upon some equitable basis to be devised by the legislature of the very taxes derived from these particular forms of property, we find abundant reasons why said word ''or'' should be so interpreted and why the legislature of 1927 should have provided for such distribution among the political

entities thus conjoined in the act of 1927 here under review. In the first place, there was no crying evil in the former method of permitting the local distribution of taxes upon these local properties excepting only the difficulty of bringing them out of hiding, due to the fact that they were being overtaxed under the methods of valuation and duplicated taxation then in vogue.

On the contrary, it is a sound principle of taxation, and one wholly in accord with the fundamental maxims of popular government, which prescribes that in so far as practicable the benefits of taxation should be directly received by those who are most directly concerned in bearing the burdens of taxation. This principle had already been recognized and in a measure applied to the subject of the taxation of certain other forms of property in the amendment which added section 14 to article XIII of the state constitution in the year 1910, and which, while working a revolution in the entire method of taxing the forms of property affected thereby, was still careful to provide for compensation to local subdivisions of the state for losses which they would sustain through the outworking of the plan of taxation then put in force.

Under the provisions of subdivision (f) of section 14 of article XIII of the constitution as adopted in 1910 the state was required thereafter and up to the year 1918 to reimburse "any and all counties which sustain loss of revenue by the withdrawal of railroad property from county taxation"; and by the same subdivision it was further provided that "the legislature shall provide for reimbursement from the general funds of any county to districts therein where loss is occasioned in such districts by the withdrawal from local taxation of property taxed for state purposes only."

The legislature in the year 1911 adopted statutes effectuating these constitutional requirements, and as to the latter of them its action may be found in section 3671 (b) of the Political Code. This state of the law must have been in the minds of the framers of section 12½ of article XIII of the constitution when they submitted it to the people for adoption in 1922 and again in 1924, since we find it to be the fact the sponsors of this amendment to the constitution as it was presented to the people for adoption in the year

1922 in substantially its present form, and who had been members of the legislature which had framed and proposed it, expressly assured the electors that "this proposed amendment specifically provides that the taxes raised by the state on this type of property shall not go to the general fund of the state, but will be distributed to the municipalities *and* counties where they are owned. This brings definite advantage to the separate localities."

The amendment failed of adoption that year, but was again, and by the succeeding legislature, submitted to the people for adoption, and again the sponsors thereof, who were also members of the legislature, repeated the foregoing assurance in exact terms to the voters, who adopted the amendment. While the official statement to voters under our election laws as to the meaning and effect of measures proposed to them for adoption is not by any means controlling upon the courts, it is nevertheless a factor to be taken into account in the effort on the part of judicial tribunals to ascertain the intent of the legislature in framing and the people in adopting such measures. (*Yosemite L. Co.* v. *Industrial Acc. Com.*, 187 Cal. 774, 781 [20 A. L. R. 994, 204 Pac. 226] ; *Fay* v. *District Court of Appeal*, 200 Cal. 522 [254 Pac. 896].)

It is hardly conceivable that the electors resident in municipalities and important and populous districts would have voted to adopt this amendment to the constitution had they been informed by its sponsors that the benefits theretofore directly accruing to their immediate localities from the taxation of these forms of property therein could be wholly taken away by the legislature operating under the powers and limitations of this amendment and that their only recompense for such loss would come through the disbursement of these particular taxes for general county purposes by means of their deposit, when collected, in the general fund of the county.

Whatever benefit might thus accrue to these localities by such means would be at best an indirect benefit and could not reasonably be held to amount to "an equitable distribution of *such taxes*" to the locality "in which such property is taxed." We are, therefore, constrained to hold that the act of 1927, by its failure to provide for such equitable

distribution of the taxes upon these designated forms of property to the county, municipality, and district in which such property is taxed, has not been framed in compliance with the requirements and limitations of said amendment to the constitution, and is for that reason invalid.

The attitude of the attorney-general of the state of California toward the questions raised in the instant proceeding requires no further comment than that which has been accorded to these questions in the foregoing portions of this opinion.

In so far as the petitioner herein seeks to have a writ issued directing the respondents herein to refrain from the assessment, levy, and collection of taxes upon the aforesaid properties under the provisions of the act of 1925, her application is to that extent granted; and in so far as the petitioner herein seeks to have a writ issued requiring the respondents herein to proceed with the assessment, levy, and collection of taxes upon said properties under the provisions of the act of 1927, her application therefor is denied.

Shenk, J., Waste, C. J., Preston, J., and Seawell, J., concurred.

LANGDON J., Concurring and Dissenting.—I concur in that portion of the majority opinion which holds that the enactment of 1925 is unconstitutional and void. I dissent from that portion of the majority opinion which holds that the 1927 enactment is unconstitutional and void. I think the 1927 enactment, fairly construed, meets the requirements of section $12\frac{1}{2}$ of article XIII of the constitution of California, if that section is interpreted in accordance with its express and unequivocal language.

The majority opinion concedes that the 1927 statute is valid if it meets the following requirement of the said constitutional amendment: "That the legislature shall provide for an equitable distribution of such taxes to the county, municipality *or* district in which the property is taxed." The majority opinion also admits that if the word "or" in the above quoted clause is construed to mean what it says and not to mean "and" (what it does not say) that the legislature would have power to distribute the funds derived from taxation of the so-called intangibles to any one of

the legal entities named in the said constitutional amend-
ment, and the only remaining question for this court, ac-
cording to my view, would be as to the equity of the distri-
bution actually made. In other words, to declare the 1927
enactment unconstitutional, it is necessary to change the ex-
press wording of the constitutional amendment in question
by substituting the word "and" for the word "or." There
is nothing in the context to justify this change in language
and meaning, and nothing to show that the word "or" was
inadvertently or inaccurately used. On the contrary, in
view of the fact that the word "or" was used in a similar
constitutional amendment which was proposed and defeated
in 1922, it would seem that the word "or" was designedly
selected. Under the circumstances, it would seem to be a
stretching of the judicial prerogative to substitute language
in constitutional enactments, even in the interest of holding
subsequent legislation valid, and to use such means to hold
legislative enactments invalid seems to be a violation of
well-settled rules of construction. Statutes should never be
declared unconstitutional if they can be sustained as valid.
The language of neither constitutional nor statutory pro-
nouncements should be distorted or changed by judicial
interpretation when no ambiguity or uncertainty appears
upon the face thereof. The majority opinion, with refer-
ence to the 1927 statute, seems to me to violate both of these
fundamental rules for judicial interpretation.

By retaining the plain, simple wording of the constitu-
tional amendment under discussion, instead of substituting
other language therefor, it would seem that the legislature in
the 1927 statute has done exactly what it was authorized
to do. The only remaining inquiry, then, would be as to
whether or not an equitable distribution has been arrived
at by the legislative enactment. I am in accord with coun-
sel in his position that since the several counties of the
state embrace all its territory and hence include within
their boundaries all municipalities and all districts, the act
of 1927 in providing for the assessment and levy of the taxes
to be derived from these particular forms of property by the
counties, and in providing that such taxes when collected
should go into the general funds of each county to be thence
disbursed for those general county purposes for which

moneys placed in such general funds are available, makes an equitable distribution of said tax fund, which is thus available for the use and benefit of all the people in the county in which the property taxed is situated.

Curtis, J., concurred.

Rehearing denied.