(No. 6368.   January 18, 1937.)

JOE GORDON, Respondent, v. JOS. A. LOER and C. R. COCHRANE, Appellants.

[65 Pac. (2d) 148.]

Whitla & Knudson, for Appellants.

W. B. McFarland and C. H. Potts, for Respondent.

GIVENS, J.—The appeal herein is from a verdict and judgment entered in favor of respondent in a claim and delivery action for the return of six calves and thirty-three head of cattle, or their value, and in favor of appellants for $308.21—appealed by appellants only and from the portion of the judgment awarding possession of the cattle.

Respondent and one T. R. Jones made an agreement with appellant Loer, the pertinent terms of which will be set out hereafter, whereby respondent and Jones sold to appellant Loer a certain dairy ranch, together with the stock, tools, machinery and equipment situated thereon. At the time of the execution of the contract, February 25, 1930, a deed to the land and a bill of sale to the property thereon were also executed and placed in escrow, to be delivered upon final payments under said contract to the buyer Loer. Subsequently T. R. Jones assigned his right, title and interest

to the property to respondent, so that we will hereafter refer to respondent Gordon alone as being the seller.

The controversy herein arose when appellant Loer on or about the 13th of June, 1935, executed a bill of sale to the cattle in question to appellant Cochrane, and on or about that same day is charged with abandoning the premises and the personal property remaining thereon, with the exception of the cattle in question which were removed to the premises of appellant Cochrane.

Appellants urge as the first assignment of error the court's action in overruling the demurrer to the complaint, evidently from the argument of the assignment in the brief, on the contention that it cannot be told what the nature of the action is and that the description of the property, considering the action as one for replevin or claim and delivery, was insufficient both generally and because respondent did not own the brand alleged to have been on the cattle sought. In the first place the action was clearly one for replevin or claim and delivery and not on the bill of sale and contract of sale as constituting a lease or a chattel mortgage. Ownership of the brand was immaterial since it was used merely for descriptive purposes and no claim of ownership as such in or by the brand was made. (*State v. Grimmett*, 33 Ida. 203, 193 Pac. 380; *State v. Basinger*, 46 Ida. 775, 271 Pac. 325.) As to identifying the property, the descriptive parts of the complaint as to the cattle were in substance that respondent claimed 39 head of cattle thus designated: First, all cattle sold and being on the designated ranch February 25, 1930; the complaint refers to the bill of sale and incorporates it in the complaint and alleges it was placed in escrow in a designated bank; that appellants removed 33 head of cattle and 6 calves on June 13, 1935, and they are "now detained by defendants in Kootenai County." The bill of sale described them as all cattle now on the ranch owned by Gordon, occupied by Taylor and branded JH on the left shoulder.

This description was sufficient under the authorities. (*Pierce v. Langdon*, 3 Ida. (Hasb.) 141 at 147, 28 Pac. 401; *McConnell v. Langdon*, 3 Ida. (Hasb.) 157 at 163, 28 Pac. 403; 54 C. J. 507, sec. 182, particularly note 41; *Central*

*Savings Bank & Trust Co. v. Hall,* 73 Colo. 17, 213 Pac. 116 at 117).

"Counsel for defendant in error contend that the description is insufficient and misleading because it includes a statement that the stock was branded with a brand which it did not, in fact, bear. We do not think the complaint is open to either of the objections stated. The allegations of the complaint, even without the description in the mortgage, which is made a part of the complaint, are sufficient, under the holdings of this court, to put creditors or subsequent mortgagees on inquiry. *Strauss v. Austgen,* 67 Colo. 207, 184 Pac. 299.

"In *Yant v. Harvey,* 55 Iowa, 421, 423, 7 N. W. 675, 676, the court said:

"'When the description in a chattel mortgage is correct as far as it goes, but fails fully to point out and identify the property intended to be conveyed, a subsequent purchaser or incumbrancer is bound to make every inquiry which the instrument itself could reasonably be deemed to suggest. *Smith v. McLean,* 24 Iowa, 322.'

"This would be true even were it not alleged that the execution creditor had notice of the mortgage. *Zinn v. Denver Live Stock Co.,* 68 Colo. 274, 187 Pac. 1033.

"The sufficiency of the description, however, is a question for the jury, and the complaint is unquestionably good as against the demurrer."

██ ██ And as additional proof of the sufficiency, the deputy sheriff actually found and took into his possession the cattle claimed, and the only dispute is that some so taken into his possession were not born on the place, thus not covered by the contract of sale. This however does not militate against the sufficiency of the description, but merely raises a question of construction of the contract, appellant contending that the phrase "born on the place" is to be strictly construed; that is, only the increase actually and physically born within the geographical confines of the farm in question were in the event of the enumerated contingencies to belong to the respondent. While the contract is to be strictly construed against respondent or his predecessor who drew it, the entire context of the agreement and the relationship of

the parties indicates that such construction is too narrow and not the one intended by the parties.

Finding the complaint sufficient, also in part disposes of appellants' assignments of error numbered 3, 4, 5, 10, 12, 16, and 17.

Among other provisions, the contract provides:

"It is fully understood and agreed that all cattle, hogs, horses or chickens born upon said ranch or bought by said buyer and placed thereon after the date hereof shall become the property of said sellers until disposed of in accordance with the terms and conditions hereinbefore set forth. And in case of forfeiture of this contract by said buyer as hereinafter set forth all such property shall be and remain the property of the said sellers. . . . .

"If said buyer shall fail to make any payment or payments hereunder in accordance with the terms hereinbefore set forth, or if he shall fail to do any other act or thing herein required to be done by him, then the said sellers may, at their option, declare this contract or agreement null and void by reason of such failure. And in such case the said escrow holder shall, upon demand, return to said sellers the said attached deed and bill of sale and said buyer shall at once deliver up to said sellers the land and other property covered by the said deed and bill of sale. And in the event of such forfeiture all right, title and interest of said buyer in-and to the property covered by said deed and bill of sale shall be deemed forfeited and such property as well as all moneys theretofore paid hereunder shall be and become the property of said sellers as stipulated and liquidated damages for the breach of this contract.

"But unless a forfeiture shall be made by said buyer as aforesaid he shall have the right to full use and possession of said property from and after the date hereof."

The bill of sale described the goods and chattels as follows:

"All the cattle, horses, hogs, tools, machinery, equipment and feed now situated on that certain ranch near Black Lake, Idaho, now owned by the said Joe Gordon, and occupied as a ranch and home by J. L. Taylor for the past two years."

The determination of a claim and delivery action depends upon the right to possession of the chattels in ques-

tion. (*Smith v. Washburn-Wilson Seed Co.*, 40 Ida. 191, 232 Pac. 574; *Blackfoot City Bank v. Clements*, 39 Ida. 194, 226 Pac. 1079; *Bertleson v. Van Deusen Brothers Co.*, 37 Ida. 199, 217 Pac. 983; *Schleiff v. McDonald*, 41 Ida. 50, 237 Pac. 1108; *Western Seed Marketing Co. v. Pfost*, 45 Ida. 340, 262 Pac. 514.) By way of setting up his right to possession of the cattle, respondent alleged in his complaint that appellant Loer had failed to cultivate the requisite number of acres, has not paid certain taxes or fire insurance, permitted cattle to die, neglected to provide feed, and that respondent had to pay for some feed and for labor, and that the default of the buyer was not due to the fault of the seller, alleging further:

### VI.

"That on or about June 13, 1935, the said defendant, Jos. A. Loer, abandoned the performance of said written contract and the terms thereof, abandoned and removed from the premises described in said deed, and abandoned and left on said premises all the personal property described in said bill of sale with the exception of thirty-three head of cattle and six calves, and on said day removed the said thirty-three head of cattle and six calves, all of which were the cattle mentioned in said bill of sale and agreement, and the increase thereof, and all of which were the property of plaintiff and said Thomas R. Jones until January 1, 1935, and all of which since said date have been and yet are the property of plaintiff."

By various assignments of error, 3, 4, 5, 6, 8, 10, 11, 12, 14, 15, 16, 17, and 18, which we shall group and consider together, appellants further question the right of respondent to recover in this action because there was no declaration of forfeiture of the contract sufficient to give respondent the right to possession of all of the cattle in question. This court has held that failure to immediately make a declaration of forfeiture is obviated by abandonment. The reason being set out in *Koch v. Glenn*, 53 Ida. 761, 27 Pac. (2d) 870:

" . . . . As is pointed out in the following cases, a clause such as is contained in the contract herein—not self-executing, but optional with the vendors—while it may ordinarily require a notice of election on the part of the vendors, does

not require a notice of election when the vendees specifically abandon the contract. . . . . ''

The rule is well stated in 66 C. J. 769, sec. 358, n. 93, and supported by case authority, that:

'' . . . . So no notice is necessary where the purchaser . . . . has actually abandoned the contract or has so acted as to create a reasonable belief on the part of the vendor that he has abandoned it. . . . . ''

(See, also, *Seeley v. Security Nat. Bank,* 40 Ida. 574, 235 Pac. 976.)

It was then a question for the jury to determine whether the bill of sale was made before abandonment or afterwards, and instruction No. 1 given by the court points out to the jury that respondent claims abandonment took place on June 13th, whereas appellants claim it took place on June 15th. The evidence introduced is conflicting on this point, but the jury has resolved the conflict, determining that as between appellant Loer and respondent, the latter is entitled to possession of the cattle.

Assignments 3, 4, 5, 6, 7, 8, and 13 bear on appellants' contention that Cochrane was a *bona fide* purchaser for value, and therefore entitled to possession. It is true that the conditional sales contract was not recorded, and thereby did not import constructive notice of its contents to appellant Cochrane, I. C. A., section 62–801, requiring recording, is of course for the protection of innocent purchasers for value, but if Cochrane had actual notice it was at least equivalent to the requirement of recording, and this is the record:

(Loer on cross-examination—as to a previous sale to Cochrane.)

''Q. You told him you would have to consult with Mr. Gordon?

''A. Yes.

''Q. And you told him you would have to obtain the consent of Mr. Gordon before you consented to it?

''A. Yes.

''Q. And you told him you were on the place on contract and it was necessary that you submit everything of that kind to Mr. Gordon?

"A. Yes. That is, on stuff that was on the ranch. It didn't include the calves that were born.

"Q. Well, in 1931, when this sale was made, there wasn't much more except just one years calves, was there?

"A. Yes, but a few."

(Cochrane on direct examination—concerning the 1931 transaction.)

"Q. At that time was Mr. Loer endeavoring to sell some stock that was there on the ranch?

"A. He was.

"Q. Of what did it consist?

"A. Practically all canner cows. He had four head of canners cows in the corral, and two barren heifers and also a couple veal so I made him a price on the cows and canners and this veal and he said he would take the matter up with Kellogg or Wardner—Mr. Gordon.

"Q. What did he say was the reason—did he give you any reason he wanted to take it up with Gordon?

"A. On account of the old cows. He said he couldn't sell them without taking it up with Mr. Gordon."

(Cochrane on direct examination.)

"Q. And did you, at any time, ever know that anybody else had any interest in these particular cattle you were purchasing, other than Mr. Loer at the time you bought them?

"A. No, only the old stuff. I would have taken out the old stuff.

"Q. Did you know, at the time you purchased these cattle you got, whether they were of an age or was old stuff that Mr. Gordon and Mr. Jones had any interest in it?

"A. No.

"Q. Now, something has been said about Mr. Loer's contract with Gordon and Jones. Did he ever tell you what his contract with them was?

"A. Yes, he said he had eighty percent of all increase.

"Q. When was that that he told you that?

"A. That was the fore part of June."

(Cochrane with respect to legal advice.)

"A. He had not been to Wallace at that time.

"Q. How do you know?

"A. Because he said he was going up to get advice from his attorney as to what he could do and what he couldn't do.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"Q. You knew there was some question as to his right to bring them?

"A. Other than Loer's dispute coming up there—knew then there was a difference of opinion.

"Q. You knew his right was questionable, didn't you, Cochrane, right then?

"A. No.

"Q. And you knew he was going to consult an attorney in regard to his right to these cattle, didn't you?

"A. Yes, sir."

Respondent takes the position as against appellants' theory that Cochrane was a *bona fide* innocent purchaser for value, that the transaction between Loer and Cochrane was only a pretended sale and no actual or real consideration ever in fact was given, and if there was no consideration and the property was to be returned if title was not good, it not only put Cochrane on notice but also as to lack of consideration defeated his status as a *bona fide* purchaser. (55 C. J. 603 to 616, particularly sec. 636.) The solution of this phase was for the jury and the evidence detailed above furnished a basis for their conclusion and the instructions as to this point were not incorrect.

Since the jury in effect found the facts contrary to appellants' contention, instructions No. 10, 11, 12, 13, 14, and 15, complained of in assignments No. 3, 4, 5, 6, 7 and 8, sufficiently stated the applicable law without being prejudicial to appellants, and refusal to give the instructions requested as urged by assignments of error 9 to 20 was proper for the reason that the jury was properly instructed on the points in the instructions given, and the others were properly refused for the reason that they did not properly state the law as applied and elsewhere set forth in this opinion.

The court with meticulous care detailed the issues to the jury and the jury evidently clearly comprehended the gist of the controversy because they gave possession of the cattle to respondent on sufficient evidence to uphold the conclusion that Loer had abandoned and forfeited the contract, and on

the other hand awarded appellants as set-off, what was rightly due them for care and keep of the cattle and loss sustained, in connection with the purchase of feed therefor, by their being taken from Cochrane's possession.

Appellants have not specifically urged assignments of error numbered 1, 2, 6, 19, 20 and 21, nor cited authorities to sustain the same, but upon an examination of these assignments we find that the points urged have already been disposed of *supra*.

The judgment is therefore affirmed. Costs to respondent.

Morgan, C. J., and Ailshie, and Budge, JJ., concur.

Holden, J., concurs in the conclusion.