COMMODITY CREDIT CORPORATION *v.* WELLS *et al.*

No. 12877.   JUNE 16, 1939.

*G. M. Lawson,* for plaintiff in error.

*Erwin & Nix, J. B. G. Logan, R. C. Scott,* and *Herbert R. Edmondson,* contra.

GRICE, Justice.   A. P. Chambers obtained a loan from the Gainesville Production Credit Association, and secured the same by a first mortgage on certain of his live stock and the crops to be produced by him, including cotton to be grown on 130 acres of land.   Later the owner and holder of this mortgage, or bill of sale, foreclosed it and levied on mares and mules and the remainder of the crops of Chambers then on hand.   After the date of the loan and mortgage above referred to, J. S. Wells made a loan to Chambers, and accepted as security for the loan a second mortgage on the live stock referred to in the first mortgage and on "100 acres of cotton and about 90 acres of corn now growing in Homer District, Banks County, Georgia."   Before a sale was made under the foreclosure mentioned above, Wells filed in Banks superior court a petition against Chambers, the Gainesville Production Credit Association, and the sheriff, alleging that his mortgage was taken to secure the payment of a stated sum owing to him by Chambers for fertilizers used in producing his crop during the year 1937.   He attached to his petition a copy of his mortgage, and alleged that his mortgage was made subject to the instrument held by the other mortgagee; that Chambers was insolvent, and had concealed himself or absconded; that Wells had been informed that Chambers had caused a number of bales of cotton grown on the premises, and covered by the two mortgages, to be pledged for loans; that unless the cotton on hand were recovered, Wells would suffer irreparable loss and damage; that if the property levied on were at once sold, it would be sacrificed, and Wells' security would become worthless, but if the sale were delayed 60 to 90 days, the

property would bring 25 to 40 per cent. more. He prayed that a receiver be appointed to take charge of Chambers' property for the purpose of realizing the total indebtedness due to petitioner and Gainesville Production Credit Association; and that a sheriff's sale be temporarily restrained until further order of the court.

Wells amended his petition by alleging that the description of the live stock in his second mortgage is adequate to notify all persons of his second lien; that while the description of the land planted to crop by Chambers in plaintiff's mortgage is likely insufficient to be notice to third parties, the description of the land planted to crop by Chambers in his mortgage in favor of the Gainesville P. C. A. is adequate to be notice to all persons by reason of its record of the prior lien on the crop to be grown by Chambers for that company, and that plaintiff's mortgage recites that it is subject to that mortgage; and he expressed the opinion that there was sufficient property available to pay both the first and second mortgages; and he prayed that the assets of Chambers be marshaled, and that the first mortgagee be required to proceed first against certain cotton located in a warehouse, before applying the proceeds of the sale of live stock.

Commodity Credit Corporation filed its intervention, alleging that it was the holder and owner of cotton producer's notes signed by Chambers, secured by cotton stored with Davis Warehouse Company, listing the number of bales and the numbers of the warehouse receipts, and alleging that Wells' mortgage was not sufficiently definite to notify persons dealing with Chambers. This intervenor claimed title to the cotton referred to. By amendment it alleged that the description of the land contained in Wells' mortgage was meager, insufficient, not legal and valid, and not adequate to notify persons dealing with Chambers of the plaintiff's asserted lien on said cotton; that the notes secured by the cotton claimed were purchased from a named bank, intervenor being bound by its contract with the bank to purchase the notes; and that Chambers, by signing the note and loan agreement, represented himself to be the owner of the land on which the cotton was produced, and that he had title to the cotton, and that there were no liens against said cotton.

The court decreed as hereinafter set forth, and the intervenor excepted.

■ Two questions are raised in the bill of exceptions. The first is that the court erred in its finding of fact that the cotton claimed by Wells was produced on real estate alleged to have been described in the mortgage from Chambers to him. The bill of exceptions contains none of the evidence, and no reference to any approved brief of the evidence, although among the portions of the record specified as material to a clear understanding of the errors complained of is: "Complete transcript of oral testimony and documentary evidence." In transmitting the record the clerk certified that no such transcript had been filed in his office. There is nothing in the record that purports to be a transcript or brief of the evidence. Not having before us the evidence which the judge had before him, we can not consider the assignment of error relating to a finding of fact made by him.

■ The second question, however, does not depend on the evidence, but upon a ruling of law contained in the decree of the court. Error is assigned on the ruling that the record of the mortgage from J. S. Wells to A. P. Chambers constituted constructive notice to third parties, the insistence being that the description of the real estate contained in said mortgage was insufficient to put third parties on notice. That description is as follows: "8 head of mules and two horses as described in mortgage to Gainesville P. C. A., dated January, 1937, and due Nov. 1st, 1937; also 100 acres of cotton and about 90 acres of corn now growing in Homer District, Banks County, Ga. This mortgage is given for fertilizer with which to make said crop, and is subject to said mortgage in favor of the Gainesville P. C. A." This mortgage is dated July 2, 1937, and recorded July 3, 1937. The decree of the court recites: "A mortgage in favor of Gainesville P. C. A. (referred to) dated January 6, 1937, and reciting to secure a note of even date, which contains the due date, rate of interest, etc., and which note itself was not given in evidence, and which was recorded Jan. 11, 1937, in Book No. 39 of mortgages, p. 192 of Banks Co., Ga., contains the following: 'All crops planted and growing and to be planted and grown within twelve (12) months from the date hereof on the tract or tracts of land situate in the Homer District of Banks County, Georgia, described as follows.' Then follows a definite description of 389 A. tract and a 59¾ A. tract, and is added: 'Borrower has planted or will plant on said lands not less

than the following described crops: 130 acres of cotton; 192 acres of corn; 32 acres oats; 30 acres hay; 16 acres cane; 22 acres peas; 10 acres soy beans. This being all the crops grown or to be grown on the above lands.' Then follows a particular and definite description of 2 mares and 5 mules and 2 cows and farm tools and machinery. . . 24 bales of cotton alleged to have been grown on the lands were sold by A. P. Chambers to third persons who filed their intervention setting up their claims to the property."

The intervenors had no actual notice of the mortgage. Was the description in the Wells mortgage sufficient to give constructive notice? It is not claimed that, standing alone, the description "100 acres of cotton and about 90 acres of corn now growing in Homer District, Banks County, Ga.," will suffice. Compare *Osborne* v. *Rice,* 107 *Ga.* 281 (33 S. E. 54), and cit. The Wells mortgage, however, makes two references to a mortgage to Gainesville P. C. A., together with its approximate date and the date of its maturity. It does not expressly state that A. P. Chambers was the mortgagor therein, but the claim that "This mortgage is given for and is subject to said mortgage in favor of Gainesville P. C. A." might imply as much. There is no statement in the Wells mortgage that the other mortgage is recorded. Nevertheless the decree recites that a mortgage in favor of Gainesville P. C. A., dated January 6, 1937, was recorded on January 11, 1937, and contained a definite description of a tract of land. In providing that a mortgage shall specify the property on which it is to take effect, the law does not require such a description as will serve to identify the property without the aid of parol evidence. *A. S. Thomas Furniture Co.* v. *T. & C. Furniture Co.,* 120 *Ga.* 879 (48 S. E. 333). It is only when a description is manifestly too meager, imperfect, or uncertain to serve as adequate means of identification that the court can adjudge the description insufficient as matter of law. *Broach* v. *O'Neal,* 94 *Ga.* 474 (20 S. E. 113); *Duke* v. *Neisler,* 134 *Ga.* 594 (58 S. E. 327, 137 Am. St. R. 250). The Code, § 37-116, is in this language: "Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found such inquiry might have led. Ignorance of a fact, due to negligence, shall be equivalent to knowledge, in fixing the rights of parties." In *Talmadge* v. *Interstate B. & L. Association,* 105 *Ga.* 550 (31 S. E. 618), was quoted with approval a

holding in Cambridge Valley Bank *v.* DeLano, 48 N. Y. 326, that "Where a purchaser has knowledge of any fact sufficient to put a prudent man upon an inquiry which, if prosecuted with ordinary diligence, would lead to actual notice of some right or title in conflict with that he is about to purchase, it is his duty to make the inquiry; and if he does not make it, he is guilty of bad faith or negligence to such an extent that the law will presume that he made it, and will charge him with the actual notice he would have received if he had made it." This court in the *Talmadge* case said that the principle just quoted is supported by numerous authorities, and ruled thus: "Where a deed is recorded, the record is not only constructive notice of the recorded deed and its contents, but it will also be notice of all other deeds and their contents to which reference is made in the recorded deed. Tiedeman, Real Property, § 817b, and authorities cited. In order to bind a subsequent purchaser with notice he must have actual notice of the deed, or knowledge of such facts as would set a prudent man upon inquiry; and as a deduction from this rule the law imputes to a purchaser a knowledge of every fact which appears upon the muniments of title, or which one should inquire after in the investigation of the title." Applying the foregoing to the question before us, we are of the opinion that no cause is shown for reversing the judgment.

*Judgment affirmed. All the Justices concur.*