[Civ. No. 16334. First Dist., Div. One. June 15, 1955.]

THEODORE GOLDEN, Plaintiff and Respondent, v. STATE OF CALIFORNIA, Defendant and Respondent; Mc-KESSON AND ROBBINS, INC. (a Corporation) et al., Appellants; UNITED STATES OF AMERICA, Intervener and Respondent.

Shapro & Rothschild and Raymond T. Anixter for Appellants.

Golden, Stefan & Fratis for Plaintiff and Respondent.

Leon E. Gold for Defendant and Respondent.

Lloyd H. Burke, United States Attorney, Charles Elmer Collett, Assistant United States Attorney, Melvin L. Sears, Regional Counsel, Internal Revenue Service, Leon Yudkin and Robert G. Thurtle for Intervener and Respondent.

WOOD (Fred B.), J.—On March 14, 1949, Henry Fleck agreed to sell his restaurant and bar business including his on-sale liquor license. In accordance with the provisions of section 7.2 of the Alcoholic Beverage Control Act, Deering's General Laws, Act 3796, now sections 24073-24075 of the Business and Professions Code, notice of the intended sale was recorded in the official records of the county; an escrow holder was designated; the purchase price, $7,700, was deposited with him; and the appellants herein, general creditors of the seller, filed their claims with the escrow holder within the prescribed period of seven days after the recording of the notice.

It happened that the seller was also indebted to the gov-

ernment of the United States for internal revenue taxes which the Commissioner of Internal Revenue had assessed against the seller in varying amounts, from time to time, between May 7, 1948, and March 3, 1949. The Collector of Internal Revenue received the assessment lists at various times between May 18, 1948, and March 3, 1949. Notices of lien were filed in the office of the Recorder of the county on various dates between June 7, 1948, and March 3, 1949, except that as to an assessment in the amount of $143.51 made March 3, 1949, and list received by the collector the same day, the notice of lien was filed with the county recorder on June 22, 1949.

The government filed no claim with the escrow holder during the seven-day period, March 18-25, 1949. It did, on the first of April following, serve on him a notice of levy in the amount of $14,274.87.

The trial court found that the government acquired tax liens on all of the "property and rights to property of the seller . . . , including the proceeds from the sale of on-sale general liquor license . . . on the dates that the Commissioner's respective assessment lists were received by the Collector of Internal Revenue . . .; such liens were then valid as to all persons except purchasers, mortgagees, pledgees and judgment creditors; as to such persons said liens became valid on the dates when notices of said tax liens were recorded in the office of the County Recorder . . ."; and that the claims of the appellants are "subordinate and inferior to the claims and liens" of the government.

The trial court concluded therefrom and decreed that the government be paid the sum of $7,035.75, the unexpended balance of the $7,700 purchase price remaining after payment to the escrow holder for his services and expenses.

Appellants contend that the government acquired no interest in or lien upon the liquor license or the proceeds of its sale, and no right to payment from the proceeds until after payment in full of the claims of the appellants.

(1) *The United States acquired a lien upon the license if the license was "property" or a "right to property" within the meaning of those terms as used in section 3670 of title 26 of the United States Code.* Section 3670 declares that "if any person liable to pay any tax neglects or refuses to pay . . . after demand, the amount . . . [including interest, penalty, additional amount, addition to the tax, and costs] . . . shall be a lien in favor of the United States upon all property

and rights to property, whether real or personal, belonging to such person."*

■ "Property" was there used by Congress in a broad, not narrow, sense; designed to include all concepts of the term. (See *Citizens State Bank of Barstow* v. *Vidal,* 114 F.2d 380, 383; *Metropolitan Life Ins. Co.* v. *United States,* 107 F.2d 311, 313; and cases collected in 174 A.L.R. 1373, § 6, 1378-1384.) "Although 'in the interpretation and application of federal statutes, federal not local law applies' [citations], it is necessary to examine the rights which flow under state law from ownership of an on-sale liquor license in determining whether it possesses the characteristics of 'property' within the Bankruptcy Act. [Citations.]" (*In re Quaker Room* (S.D. Cal., 1950), 90 F.Supp. 758, 760-761.)

"Property" has been defined as "the thing of which there may be ownership" (Cal. Civ. Code, § 654). "There may be ownership of all inanimate things which are capable of appropriation or of manual delivery; of all domestic animals; of all obligations; of such products of labor or skill as the composition of an author, the good-will of a business, trade-marks and signs, and of rights created or granted by statute." (Civ. Code, § 655.)

The general on-sale liquor license in California would seem to meet these tests. It is issued to a specific person. Although issued upon an annual basis, it is renewable under the conditions expressed in the statute. (Act 3796, § 8.) A renewal is deemed a continuation of the original license. (*Saso* v. *Furtado,* 104 Cal.App.2d 759, 762 [232 P.2d 583].) It is transferable from one person to another upon approval by the state agency which administers the Alcoholic Beverage Control Act and upon payment of a transfer fee. (Deering's Gen. Laws, Act 3796, § 7; Stats. 1947, ch. 1566, pp. 3219, 3221.)

The limitation of the number of on-sale general licenses (Act No. 3796, § 38 f; Stats. 1945, ch. 1401, p. 2615 at 2642), coupled with the factor of transferability, tends to create for each license a substantial value; evidenced in the instant case

---

*The "lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time." (26 U.S.C. 3671.) The lien is not valid "as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector . . . [i]n the office in which the filing of such notice is authorized by the law of the State . . . in which the property subject to the lien is situated, whenever the State . . . has by law authorized the filing of such notice in an office within the State . . ." (26 U.S.C. 3672.)

by the sum of $7,700 which the purchaser paid into escrow, the license being the principal item of value in the transfer.

 A contract to transfer a license, subject of course to approval by the state licensing agency and the other conditions and restrictions imposed by law, is valid. A refusal to perform such a contract is remediable; e. g., specific performance (*Campbell* v. *Bauer,* 104 Cal.App.2d 740 [232 P.2d 590]; *Saso* v. *Furtado,* supra, 104 Cal.App.2d 759; *Etchart* v. *Pyles,* 106 Cal.App.2d 549 [235 P.2d 427]; *Leboire* v. *Black,* 84 Cal.App.2d 260 [190 P.2d 634]); rescission and damages (*Fong* v. *Rossi,* 87 Cal.App.2d 20 [195 P.2d 854]).

 Like any other contract, it enjoys constitutional immunity from legislative impairment. The prohibition against pledging the transfer of a license as security for a loan or for the fulfillment of an agreement, expressed in section 7.3 added to the act in 1949 (Stats. 1949, ch. 1348, p. 2349, 2360), could not and did not operate retroactively. (*Pehau* v. *Stewart,* 112 Cal.App.2d 90, 96 [245 P.2d 692], and cases cited.) We observe, also, that section 7.3 merely narrows the scope of the uses and purposes of an agreement for transfer. It constitutes express recognition of the right to contract for transfer of a license.

We have found no California Supreme or appellate court decision directly in point on the question whether the license here involved is "property" within the meaning of 26 U.S.C. 3670. It was held nontaxable in *Roehm* v. *County of Orange,* 32 Cal.2d 280 [196 P.2d 550], because under our statutes a tax simply is not imposed upon this kind of property, not because a liquor license is not property, a question not decided. *Hevren* v. *Reed,* 126 Cal. 219 [58 P. 536], and *State Board of Equalization* v. *Superior Court,* 5 Cal.App.2d 374 [42 P.2d 1076], dealt merely with such questions as the revocability of a liquor license and the notice and hearing requirements, if any, applicable thereto.

The federal district court, southern district of California, has held, in a well considered opinion, that the California liquor license is "property" as that term is used in the Bankruptcy Act. (*In re Quaker Room,* supra, 90 F.Supp. 758.) The court of appeal for the District of Columbia has held that a transferable liquor license is a "property right" which is subject to execution to satisfy a judgment, declaring that the "rule of the common law which forbids a levy upon licenses, was confined, and should be confined to non-transferable licenses" and that "the reason for the rule fails in

the case of a license which, by express statutory provision, is made subject to transfer . . .'' even though subject to limitations and restrictions. (*Rowe* v. *Colpoys,* 137 F.2d 249, 251 [78 App. D.C. 75, 148 A.L.R. 488]; cert. denied, 320 U.S. 783 [64 S.Ct. 190, 88 L.Ed 470].) Similarly, in Montana a liquor license which is transferable with the consent of a state agency is property which is subject to attachment. (*Stallinger* v. *Goss,* 121 Mont. 437 [193 P.2d 810].) In Washington it is property which passes to a receiver when appointed to conserve the assets of a business. (*Deggender* v. *Seattle Brewing & Malting Co.,* 41 Wash. 385 [83 P. 898, 4 L.R.A.N.S. 626].) By way of comment upon decisions of this character, including some that we have cited, our Supreme Court recently said: ''These decisions recognize the principle that since such a license has a transferable value to the debtor it is property that in fairness ought to be within the reach of his creditors. Since by statute a liquor license in this state has in effect been given a transferable value, it has assumed the characteristics of property.'' (*Roehm* v. *County of Orange, supra,* 32 Cal.2d 280, 283.)

██ We conclude that the liquor license in question was ''property'' within the meaning of section 3670 and became subject to the government's lien for taxes.

██ (2) *Did the United States acquire a lien against the proceeds, the money in escrow?*

Appellants seem to concede that if the tax lien attached to the license it attached immediately to the proceeds of the sale of the license. While no case precisely so holding has been brought to our attention it seems sound upon principle. Although not strictly analogous, it is in harmony with the holding that a federal tax lien on real estate which is subject to a prior mortgage attaches to the proceeds of sale upon foreclosure of the mortgage, subject to satisfaction of the mortgage and other prior liens, if any. (*United States* v. *New Britain,* 347 U.S. 81 [74 S.Ct. 367, 98 L.Ed. 520].) Similarly, upon distraint and sale of a taxpayer's personal property for payment of rent accruing, the government by reason of its tax lien under section 3670 had a prior right to the proceeds of sale in *Jones* v. *Mustard* (1954), —— Del. —— [109 A.2d 789].

Even if the government had acquired no lien on the liquor license, there is considerable authority tending to support the view that the tax lien nevertheless attached to the proceeds of the sale when those proceeds came into existence. Sections

3670, 3671 and 3678 of title 26 of the United States Code provide for a continuing lien on all property of the taxpayer, thus including property presently owned and that which is later acquired. (*Glass City Bank* v. *United States*, 326 U.S. 265 [66 S.Ct. 108, 90 L.Ed. 56]; *In re Salsbury Motors, Inc.*, (S.D., Cal., 1951), 104 F.Supp. 482, affirmed in 210 F.2d 171, cert. den. in 347 U.S. 953 [74 S.Ct. 679, 98 L.Ed. 1099].) Thus, it has been held that grapes grown on the taxpayer's land after the government's notice of lien has been filed are subject to that lien (*Nelson* v. *United States* (9th Circ., 1944), 139 F.2d 162, cert. den. 322 U.S. 764 [64 S.Ct. 1287, 88 L.Ed. 1591]).

At the very moment the taxpayer and his purchaser entered into the contract for the sale of the liquor license the taxpayer acquired a chose in action for the stipulated purchase price, to which "property" or "right to property" the government's pre-existing tax lien immediately attached. Then when the purchase price money was paid into escrow the tax lien at once attached and later followed the fund when paid into court in this interpleader action.

In this process there was no opportunity for the claims of the appellants (general creditors, not lien holders) to acquire precedence over the government tax lien. The federal statute certainly gave those claims no priority. We do not believe the state statute (§ 7.2, Act 3796) was intended to give them precedence over the prior government tax lien, nor do we believe it competent for the state in any such manner to impinge upon and thwart the operation of the congressional statute. "The government has plenary power over the property of taxpayers to collect taxes and is in no wise subject to state laws." (*Metropolitan Life Ins. Co.* v. *United States, supra*, 107 F.2d 311, 313. See also *United States* v. *New Britain, supra*, 347 U.S. 81, 84; *United States* v. *Division of Labor Enforcement* (9th Circ.), 201 F.2d 857; *United States* v. *E. Regensburg & Sons*, 124 F.Supp. 687, 690; *Jones* v. *Mustard, supra*, 109 A.2d 789, 791-792; *United States* v. *Standard Brass & Mfg. Co.*, (Tex. Civ. App.) 266 S.W.2d 407, 409.) State exemption laws do not prevent the federal tax lien from attaching. (174 A.L.R. 1373; § 7, 1384.)

Consonant with these views is the very recent case of *United States* v. *Blackett* (9th Circ., March, 1955), 220 F.2d 21. After liens under 26 U.S.C. 3670-3672 had been perfected, creditors of the taxpayer obtained the sale of his on-sale liquor license in proceedings to enforce their judgment against

him. The proceeds were paid to the marshal of the municipal court, as receiver, for proper distribution. The government sued in the district court, which ordered the proceeds paid to the judgment creditor, saying: " '. . . ; the said on-sale liquor license not being subject to any lien whatever, either in favor of the United States of America or any other person, firm or entity, and the said proceeds from the sale thereof being the result only of an in personam proceeding supplementary to judgment against John R. Blackett in accordance with the laws of the State of California relative thereto.' " (P. 22.) In reversing that judgment the court of appeals said: "The United States at no time attempted to impose its lien against the liquor license, but upon the sale taking place and money having been received therefor, it claims that it has the right to enforce its lien against the money as 'property and right to property' of the delinquent taxpayer. It is true that the sale was precipitated by the judgment creditor, but whatever was received through the sale became the property of the vendor-owner, subject, as any other property belonging to him, to valid liens thereon in the order of their priority, in this case, first the tax lien, second the judgment creditor's lien. [Citations.]" (P. 23.)

Appellants argue that in view of the provisions of section 7.2 of the state statute the taxpayer had a right to that portion only of the escrowed purchase price money as might be left after payment of creditors' claims that were filed within the prescribed seven day period and that the government's tax lien could apply only to that portion. That is specious reasoning. It would permit a person to sell a valuable property and apportion the proceeds among his creditors in utter disregard of the prior tax lien which the federal statute unequivocally declares. Appellants' cases do not support their contention. Thus, *Steineck* v. *Haas-Baruch Co.*, 106 Cal.App. 228 [288 P. 1104], appropriately held that a certain creditor sued and attached too late. He did so *after* the debtor-vendor had assigned his interest in the purchase price money by instructing the escrow holder to pay certain other creditors of his. *New York Cas. Co.* v. *Zwerner*, 58 F.Supp. 473, was a case in which the government claimed a lien upon the moneys accruing to a contractor under a construction contract. But the contractor's surety had become entitled to that balance. The surety had paid claims for labor and material under the obligation of its performance and payment bonds; hence, it had an equitable lien on any

and all funds remaining unpaid to the contractor (the taxpayer), a lien that related back to the time of execution of the suretyship contract, which in turn antedated the tax lien.

(3) *Did the United States take the necessary procedural steps to perfect its lien and collect the tax? Yes.*

█ Appellants suggest that the government should have filed notice of its claim with the escrow holder within the seven day period prescribed by section 7.2 of the state statute (Act 3796). We find no such requirement in the federal statute, which as we have noted is not dependent upon state law for its implementation. The only ''filing'' pursuant to state law which the federal statute (26 U.S.C. 3672) prescribes is filing in an ''office'' (not with a mere escrow holder) when authorized by the law of the state in which the property is situated (the county recorder, Cal.Gov.Code, § 27330) and then only to give the lien validity as against a ''mortgagee, pledgee, purchaser, or judgment creditor,'' none of whom is present in this case.

Accordingly, in the instant case the tax lien arose against the property of the taxpayer when the assessment list was received by the collector and attached to the taxpayer's after-acquired property as soon as the latter came into existence. (26 U.S.C. 3671.)

Appellants in their closing brief further suggest that the United States could enforce the lien only by bringing an independent action therefor under section 3678 of the United States Code. They cite only *Maryland Cas. Co. v. Charleston Lead Works*, 24 F.2d 836. The court in that case did refer to the procedure under former Revised Statutes, section 3207 (now 26 U.S.C. 3678-3679) as exclusive but it was dealing with the right of a private owner of a real estate lien to file a petition in the federal district court for a determination of all claims to or liens upon the real estate.

█ That the filing of an action in the federal district court is not the exclusive mode for collection of the tax by the government is demonstrated by the very existence of the separate and independent remedy of distraint. (26 U.S.C. §§ 3690-3717.)

█ Where, as here, the United States, at the request of the Commissioner of Internal Revenue and by the direction of the attorney general, has with approval of the court intervened in this interpleader action, and the parties have joined issue and have tried the case upon the merits, it is too late

now to question the capacity of the intervener to appear and participate in the action. (Code Civ. Proc., §§ 430-434.)

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.