395 P.2d 671

**Walter F. SCHIECHE, Plaintiff-Appellant,**

**v.**

**Joyce L. PASCO, a married woman dealing in her sole and separate property, Jack Ricketts and Beatrice Ricketts, husband and wife, and Ada Lathrop, a married woman dealing in her sole and separate property, Defendants-Respondents.**

**No. 9465.**

Supreme Court of Idaho.

July 6, 1964.

Rehearing Denied Oct. 20, 1964.

Thomas A. Mitchell, Coeur d'Alene, Idaho, for appellant.

William A. Reagan and Craig Kosonen, Coeur d'Alene, for respondents.

38

TAYLOR, Justice.

Defendant (respondent) Joyce Pasco was the wife of Ronald Willford from March 21, 1954, to and including December 16, 1962. In July, 1962, the Willfords, as lessees, obtained a lease of the premises located at 204 Sherman Avenue, Coeur d'Alene, Idaho, where the business known as the Flame Bar and Cafe was being conducted, and a transfer of the Kootenai county beer license for the Flame Bar from the name of the former occupant to "Joyce Willford." October 15, 1962, Joyce Willford entered into a lease with the owner by which she alone became the lessee. October 25, 1962, Joyce Willford obtained in her own name a State of Idaho retail liquor license for use in the business of the Flame Bar during the remainder of the year 1962, and on December 6, 1962, she obtained in her own name Idaho State retail liquor license for the Flame Bar for the year 1963. November 12, 1962, Joyce Willford gave to Walter Schieche, plaintiff (appellant), a mortgage to secure a promissory note, of even date, made by the mortgagor, payable to the mortgagee, in the sum of $20,000. The property subject to the mortgage was described therein as follows:

"The business, fixtures, good will, inventory and lease on the Flame Bar,

located at 204 Sherman, Coeur d'Alene, Idaho, situated upon the following described real property:

"The East 24 feet of the West 60 feet of Block "U", Town of Coeur d'Alene, King's Addition to the City of Coeur d'Alene, County of Kootenai, State of Idaho;

"Together with the following items of personal property:"

(Then follows a list of utensils and equipment commonly used in the operation of a small cafe and bar.) The mortgage was duly filed for record in Kootenai county.

December 17, 1962, Joyce Willford obtained a divorce from Ronald Willford. In her complaint Joyce Willford claimed the Flame Bar, good will, trade name and licenses to retail liquor and beer, as her sole and separate property, and by the divorce decree the property was awarded to her as such.

February 24, 1963, Joyce Willford married Frank Pasco. July 11, 1963, Frank Pasco and Joyce Pasco entered into an agreement to sell and transfer the 1963 state retail liquor license to defendants (respondents) Jack and Beatrice Ricketts for the sum of $2,500 and on that day Joyce endorsed a transfer of the license to Ricketts on the back thereof. The consideration was paid, $961 to the Pascos, and the balance to the United States Treasury for the satisfaction of tax liens filed by the government against the Flame Bar.

Plaintiff commenced this action to foreclose the chattel mortgage, July 16, 1963.

Upon trial, the facts as above set out were stipulated by counsel. In addition thereto, Jack and Beatrice Ricketts were called and examined as adverse witnesses by the plaintiff. Their testimony discloses that they began negotiations with Pascos for the transfer of the liquor license about two months before the deal was concluded; that they learned that the Pascos were not doing "too well" at the Flame Bar; that they owed back taxes; that they were advised by the federal agent that the tax lien covered the liquor license; that the Pascos had never mentioned a mortgage or other lien on the property; and that they had not examined the county records nor had them examined to determine whether any such lien existed.

■ From the facts the trial court properly concluded that the state liquor license was subject to encumbrance by chattel mortgage. I.C. § 45–1101. It is a qualified, defeasible property right. In Weller v. Hopper, 85 Idaho 386, 379 P.2d 792 (1963), this court held, as summarized in syllabus four, that:

"Statutes governing transfer of liquor licenses and limiting number of li-

censes that may be issued connote that liquor license, as between licensee and third persons, constitutes right to which value as property and assignability is attributed, and as between licensee and third persons, the right is assignable by personal representative of a deceased licensee. I.C. §§ 23–903, 23–908."

See also: Golden v. State, 133 Cal.App. 2d 640, 285 P.2d 49 (1955); Stallinger v. Goss, 121 Mont. 437, 193 P.2d 810 (1948); Roehm v. Orange County (Cal.App.) 187 P. 2d 49, (Cal.) 32 Cal.2d 280, 196 P.2d 550 (1948); Hom Moon Jung v. Soo, 64 Ariz. 216, 167 P.2d 929 (1946); Belle'Isle v. Hempy, 206 Cal.App.2d 14, 23 Cal.Rptr. 599 (1962); MacNicol v. Grant, 337 Mich. 309, 60 N.W.2d 290 (1953); Nicolini v. Langermann (Tex.Civ.App.) 104 S.W. 501 (1907); Anno. 148 A.L.R. 492 (1944).

The court's second and third conclusions were as follows:

"That in this particular instance, however, the chattel mortgage before this Court is not broad enough in its terms to include the liquor license in question.

. . "That the prior filing of the chattel mortgage did not serve as constructive notice to the Defendants, RICKETTS in as much as the liquor license in question was not included within the terms thereof. It is to be recognized that Conclusion No. 2 above effectively disposes of this matter as between these parties, and that Conclusion No. 3, and the reason stated therefor, are but natural concomitants to the decision stated in Conclusion No. 2. For this reason it is deemed unnecessary to make a determination relative to the issue of whether the prior filing of the chattel mortgage would, were the chattel mortgage found to include the liquor license, still be constructive notice to these defendants."

In Twin Falls Bank & Trust Co. v. Weinberg, 44 Idaho 332, 337, 257 P. 31, 54 A.L.R. 1527 (1927), this court considered a chattel mortgage which described the property as follows:

"All crops grown during the season of 1921 of whatsoever nature, but estimated to consist of approximately 12 acres of alfalfa, 3 acres of potatoes, and one acre of onions."

(followed by a description of the land on which the crops were to be grown.) In that case this court held the description sufficient to include a crop of apples of the value of $1,850. A third party who had purchased the apple crop from the mortgagor, contended that the general description of "all crops" was limited to the kinds of crops

specifically mentioned. Referring to that contention the court said:

> "Primarily, it is our duty to ascertain from the contract itself the intention of the parties, so far as is possible, and give it effect. 6 R.C.L., p. 835, § 225. See, also, 13 C.J. 521.

> " 'If the contract, taken as a whole, shows that effect was intended to be given to both the general and the specific term, such effect must be given by the court. If the contract shows that the general words were intended to control, or if an absurd result would follow from permitting the specific words to control, effect will be given to the general words.' 4 Page on Contracts, (2d Ed.), p. 3496." 44 Idaho at 341–342, 257 P. at 34.

and concluded:

> "The mortgage covered the apple crop grown during the year 1921, and the description contained in the mortgage was sufficiently definite to enable appellants on inquiry to identify it. This was enough. The mortgage, being duly recorded, was notice to appellants, whose purchase occurred after the recording of the mortgage. (Citations.)" 44 Idaho at 342, 257 P. at 34.

10 Am.Jur., Chattel Mortgages,

> "§ 129. * * * Primarily, in the determination of what property is covered by a mortgage, the court must ascertain from the instrument itself the intention of the parties, so far as possible, and give it effect. All descriptions must be construed in view of the general principle that the law presumes that the mortgagor intended to confer some benefit on the mortgagee, and the instrument must be construed as a whole in view of all its parts so that every part may be made effectual.

> \* \* \* \* \* \*

> "§ 130. * * * The enumeration of certain specific articles in a mortgage also containing a general description of like articles will not prevent like articles other than those specifically enumerated from passing under the general description.

> \* \* \* \* \* \*

> "§ 131. * * * A chattel mortgage upon appurtenances, fixtures, and the like generally covers personal property that is intimately connected with the operation of the establishment or plant which is mortgaged. * * *"

> " * * * A description of property is sufficient if it will enable a third person, aided by inquiries suggested by the instrument, to identify the property." McConnell v. Langdon, 3 Idaho 157, 163, 28 P. 403, 405 (1891).

In Gordon v. Loer, 57 Idaho 269, 273, 65 P.2d 148 (1937), where a bill of sale was

involved, this court quoted from Yant v. Harvey, 55 Iowa 421, 423, 7 N.W. 675, 676, as follows:

> " 'When the description in a chattel mortgage is correct as far as it goes, but fails fully to point out and identify the property intended to be conveyed, a subsequent purchaser or incumbrancer is bound to make every enquiry which the instrument itself could reasonably be deemed to suggest.' " 57 Idaho at 273, 65 P.2d at 149.

The same rule was again quoted with approval in Kerby v. Robinson, 58 Idaho 781, 784, 80 P.2d 33 (1938).

In Pacific Nat. Agricultural Credit Corporation v. Wilbur, 2 Cal.2d 576, 42 P.2d 314 (1935), the Supreme Court of California quoted from 11 Corpus Juris 457 as follows:

> " 'As against third persons the description in the mortgage must point out the subject-matter so that such persons may identify the chattels covered, but it is not essential that the description be so specific that the property may be identified by it alone, if such description suggests inquiries or means of identification which, if pursued, will disclose the property covered. This rule is based upon the maxim, that is certain which is capable of being made certain. So a description is sufficient

if it may be aided by parol proof and the property covered by the mortgage identified.' " See: 14 C.J.S. Chattel Mortgages, § 57a(3); Witt v. Milton, 147 Cal.App.2d 554, 305 P.2d 944 (1957); Livestock Credit Corp. v. Corbett, 53 Idaho 190, 22 P.2d 874 (1933).

In Commodity Credit Corporation v. Wells, 188 Ga. 287, 3 S.E.2d 642 (1939), the Georgia Supreme Court quoted from Cambridge Valley Bank v. Delano, 48 N.Y. 326, as follows:

> " 'Where a purchaser has knowledge of any fact sufficient to put a prudent man upon an inquiry which, if prosecuted with ordinary diligence, would lead to actual notice of some right or title in conflict with that he is about to purchase, it is his duty to make the inquiry; and, if he does not make it, he is guilty of bad faith or negligence to such extent that the law will presume that he made it, and will charge him with the actual notice he would have received if he had made it.' " 3 S.E. 2d at 644.

■ Applying the foregoing rules to the facts in this case, there can be little doubt that at the time the mortgage was executed it was the intention of the mortgagor and the mortgagee to encumber the retail liquor license. The words, "The business, fixtures, good will, inventory and lease on the

Flame Bar," taken together with the items of personal property, which included a stock of liquor and furnishings necessary to the operation of such a business, indicates an intention to mortgage a going business; to give as security that which had "going concern value." The words used import an intention that the mortgagee, in case of foreclosure, would acquire a viable, salable asset, rather than a relatively valueless empty shell. As was said in Bonneviere v. Cole, 90 Wash. 526, 156 P. 527, 529 (1916), "All descriptions must be construed in view of the general principle that the law presumes that the mortgagor intended to confer some benefit on the mortgagee." "The business" could not be operated or engaged in without the license. Without the license the business and good will would be valueless. Without the license the business and good will could not be effectively mortgaged. It follows that as between the mortgagor and mortgagee the mortgage included the retail liquor license.

The description was also sufficient as to the third party purchasers. The filing for record of the mortgage was constructive notice to them of its contents. They were charged with the knowledge that the mortgage covered "The business, fixtures, good will, inventory and lease" of a going business. They knew, as a matter of both law and fact, that such a business as covered by the mortgage could not exist without the license. The fact that they bargained for the license and paid $2,500 for it, indicates they regarded it as a valuable and transferable property right. Their inquiry as to whether the federal tax lien on the Flame Bar included the license, indicates they were aware it might be encumbered. Inquiry as to the nature of the license as "property" and the legal effect of the description contained in the mortgage would have enabled them to determine that the license was encumbered. Such inquiry they were required to make in view of the notice which the instrument on file gave them. Gordon v. Loer, 57 Idaho 269, 65 P.2d 148 (1937).

The judgment is reversed and the cause is remanded with direction to enter judgment for plaintiff.

Costs to appellant.

McQUADE, McFADDEN and SMITH, JJ., and TOWLES, D. J., concur.

ON PETITION FOR REHEARING

In their petition for rehearing respondents again urge that appellant mortgagee, being a resident of the state of Washington, was not qualified (I.C. § 23–910) to hold an Idaho retail liquor license as successor in interest to the mortgagor Joyce Pasco, and that to permit such an unquali-

fied person to succeed to the right of the licensee or to have the license sold at a sheriff's sale would effectively deprive the state of its control and regulation of the sale of alcoholic beverages.

The residential disqualification of the mortgagee as a possible licensee under Idaho law at the time the mortgage was given is not considered pertinent to our decision in this case for two reasons: first, the mortgagee may have become a resident of Idaho subsequent to the date of the mortgage so as to qualify under I. C. § 23–910; and, second, the mortgagee may not become the purchaser at the foreclosure sale. In any event, the purchaser, whoever he may be, must be able to qualify as a liquor licensee under the laws of this state before he can assert any right as purchaser of the license at the sheriff's sale.

Nothing said in the opinion in this case should be construed as in any way limiting or interfering with the powers and duties of the commissioner of law enforcement with respect to the issuance or renewal of retail liquor licenses.

Other grounds urged by petitioner were considered in the original opinion.

Petition for rehearing denied October 20, 1964.

McQUADE, McFADDEN and SMITH, JJ., and TOWLES, D. J., concur.